*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K.A. EL-SHABAZZ, Minor.

UNPUBLISHED
July 14, 2022

No. 358393
Kent Circuit Court
Family Division
LC No. 20-051323-NA

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In 2018, the Department of Health and Human Services (DHHS) commenced child protective proceedings in Kent Circuit Court with regard to KB, a minor child of respondent and putative father.[1] While the termination proceedings for KB were pending, respondent gave birth to KAE. When KAE was just a few weeks old, the Kent Circuit Court issued an order to take KAE into protective custody pursuant to MCL 712A.2(b) and MCR 3.963(B). Ultimately, respondent and putative father's parental rights to KAE were terminated. The parents argue that Kent Circuit Court did not have proper jurisdiction over KAE pursuant to MCL 712A.2(b) because the child was allegedly never in Kent County until the child was picked up in Georgia in August 2020 and brought to Michigan pursuant to the trial court's order. But witnesses testified that KAE was in Kent County on or before the date that the underlying child protective proceedings were commenced. And both parents provided the trial court and caseworkers with Kent County addresses throughout the proceedings pertaining to their other child. We are not left with a definite and firm conviction that the trial court made a mistake by determining that jurisdiction over KAE was established by a preponderance of the evidence. We affirm.

## I. BACKGROUND

Respondent has history of domestic violence, maltreatment from physical neglect, medical neglect, physical abuse, and substance abuse that has led to the removal of several of her children from her care and custody. In 2018, two of her minor children were removed from her care and

---

[1] Kent Circuit Court Case No.18-00095-NA.

custody due to allegations of sexual abuse and her failure to protect them from their biological father.[2] A few months after the removal of the children, respondent gave birth to a third child, KB. In September 2018, the DHHS filed a petition in Kent Circuit Court to remove KB from respondent and putative father's care and custody.[3]

In August 2020, while the termination proceedings for KB were pending, Child Protective Services (CPS) workers received information that respondent had been pregnant and gave birth to KAE.[4] CPS workers attempted to verify KAE's wellbeing. But respondent and putative father refused to meet with CPS workers. Given respondent's prior history and the pending termination proceedings for KB, DHHS filed a complaint in Kent Circuit Court for temporary custody of KAE. On August 6, 2020, the trial court entered an ex parte order authorizing KAE to be taken into protective custody and placed with DHHS pursuant to MCL 712A.2(b) and MCR 3.963(B). Thereafter, respondent, putative father, and KAE were located in Georgia. KAE was taken into protective custody and returned to Kent County in August 2020, at which time DHHS filed a petition to place KAE in DHHS's care and custody.

Throughout the underlying proceedings, respondent and putative father maintained that they were "American nationals" and they refused to participate in any government-related services. Putative father refused to sign an affidavit of parentage or otherwise claim legal responsibility for KAE.[5] Respondent and putative father maintained that KAE was born in Indiana, but they refused to provide pertinent information so that a birth certificate could be obtained for KAE. Respondent and putative father alleged that they were married, but there is no record of a legally-recognized marriage between the two.

At the outset of these proceedings, respondent and putative father challenged jurisdiction, arguing that KAE was never in Kent County. A Kent County Sheriff's Department detective testified that she spoke with putative father's uncle on August 14, 2020 and learned that putative father, respondent, and an infant[6] visited the uncle at his Kent County residence approximately one week prior to August 14, 2020. The uncle corroborated this information and testified that the three individuals were at his residence approximately one to two weeks before the detective spoke with him. The detective also testified that she conducted an address search for respondent, which showed that her last known address was in Kent County. The trial court took judicial notice of the proceedings involving respondent and putative father's other child, KB, in which respondent and putative father provided several different Kent County residential addresses to the caseworkers

---

[2] The putative father of KAE is not the biological father of respondent-mother's other two children that were removed from her care and custody in June 2018.

[3] Respondent and putative father's parental rights to KB were ultimately terminated on August 26, 2020.

[4] Respondent testified that KAE was born at the end of July 2020.

[5] Because putative father did not take any action to establish his paternity of KAE, he was not a respondent in the underlying proceedings. *In re KH*, 469 Mich 621, 634; 677 NW2d 800 (2004).

[6] The uncle could not recall the name of his nephew's wife or child.

and the court in the two years since the proceedings were commenced in September 2018. The trial court concluded that a preponderance of the evidence established that KAE was in Kent County in early August 2020 and, therefore, jurisdiction was established.

Ultimately, respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (i) (parental rights to 1 or more siblings have been terminated because of serious and chronic neglect, and the parent has failed to rectify the conditions that led to the prior termination), and (j) (child subject to harm if returned to the parent's home). The father's rights were terminated under MCL 712A.19b(3)(a)(*i*) (the child's parent is unidentifiable, the child has been deserted for 28 days or more, and the parent has not sought custody during that period), (c)(*i*), (i) and (j). The parties now appeal by delayed leave granted.[7]

## II. STANDARD OF REVIEW

A trial court's decision to exercise jurisdiction is reviewed "for clear error in light of the court's findings of fact." *In re Christie*, __ Mich App __; __ NW2d __ (2021) (Docket No. 355940); slip op at 2. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. ANALYSIS

Respondent-mother and putative-father argue that the trial court lacked jurisdiction over KAE pursuant to MCL 712A.2(b). We disagree.

As our Supreme Court explained in *In re Sanders,* 495 Mich 394, 404; 852 NW2d 524 (2014):

> [i]n Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase. Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase. Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being. [Citation omitted.]

A trial court must find that a statutory basis for jurisdiction exists in a child protective proceeding. *In re Christie,* __ Mich App at __; slip op at 2. "Jurisdiction must be established by a preponderance of the evidence." *Id.* A circuit court's jurisdiction over a minor child in a child protective proceeding is governed by MCL 712A.2(b), which provides in relevant part:

---

[7] *In re K A El-Shabazz Minor*, unpublished order of the Court of Appeals, entered January 6, 2022 (Docket No. 358393). We limited this appeal solely to consideration of "whether the family division of the Kent Circuit Court lacked jurisdiction of KAE because the child could not be 'found within the county' as intended by MCL 712A.2(b)." *Id.*

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . .

(3) If the juvenile is dependent and is in danger of substantial physical or psychological harm. . . .

In this case, the trial court was required to determine whether KAE was "found within [Kent] county." MCR 3.926(A) provides, "As used in MCL 712A.2, a child is 'found within the county' in which the offense against the child occurred . . . or in which the minor is physically present." DHHS did not allege any particular offenses against KAE. Instead, DHHS relied on the doctrine of anticipatory neglect, which "recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re Kellogg*, 311 Mich App 249, 259; 952 NW2d 544 (2020) (emphasis omitted). "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *Id.* However, "[w]hile the doctrine of anticipatory neglect may satisfy the parental conduct component of the jurisdictional statute, it does not satisfy the geographic component relative to the child required by MCL 712A.2(b)." *In re Christie,* __ Mich App at __; slip op at 3. Thus, the relevant inquiry was whether KAE was physically present in Kent County.

Respondent and putative father argue that this case is analogous to *In re Christie*, where this Court held that the trial court did not have jurisdiction over two teenage children who were not living with their non-custodial mother. The teenagers in *In re Christie* lived exclusively with their father and had not seen their mother, who lived in another county, in approximately two years. When DHHS filed a petition to terminate the mother's parental rights as to her three-year-old son following the death of her infant daughter, DHHS included the mother's two teenage sons in the petition. The petition was filed in the county where the mother resided. Significantly, it was undisputed that the teenagers lived exclusively with their father in another county and had not seen their mother in two years. Based on this undisputed evidence, this Court concluded that neither of the teenagers were "found within" the county where their mother resided and, therefore, the circuit court lacked jurisdiction over them. *In re Christie,* __ Mich App at __; slip op at 4.

Respondent and putative father argue that KAE was born in Indiana and was never in Kent County until KAE was brought to Michigan from Georgia on August 18, 2020, pursuant to the trial court's August 6, 2020, order. They argue that, as a result, the trail court lacked jurisdiction over KAE. But, unlike the undisputed evidence in *In re Christie*, the evidence presented to the trial court does not compel this view.

There was testimony from a detective with the Kent County Sheriff's Department that putative father, respondent, and an infant visited the putative father's uncle at his Kent County residence approximately one week prior to August 14, 2020. The uncle confirmed that the visit occurred approximately one to two weeks before August 14, 2020. There was also testimony that respondent's last known address was in Kent County in August 2020. And the trial court noted that, since September 2018, respondent and putative father had provided caseworkers and the trial court with Kent County residential addresses in the proceedings involving respondent and putative father's other child, KB. The trial court concluded that a preponderance of the evidence established that KAE was found in Kent County in early August 2020 and, therefore, jurisdiction was established. We are not left with a definite and firm conviction that the trial court made a mistake by determining that jurisdiction over KAE was established by a preponderance of the evidence.

We affirm.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel