*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. KASTEN, Minor.

UNPUBLISHED
March 16, 2023

Nos. 361902; 362429
Gogebic Circuit Court
Family Division
LC No. 2021-000032-NA

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother and respondent-father appeal by right the trial court's orders terminating their parental rights to their son, MK, under MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent) and (k)(*iii*) (parent abused the child or a sibling; the abuse included battering, torture, or other severe physical abuse; and there is a reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In June 2021, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over MK and remove him from respondents' care because of allegations of physical abuse. The petition alleged that MK was born in February 2021, and had no health complications at birth. Beginning in March 2021, respondents brought MK to the doctor several times for various bruises on his body. MK was seen by doctors and specialists from March 2021 through May 2021, but no medical explanation was found for these bruises.

On May 30, 2021, respondent-father cared for MK while respondent-mother was at work. When respondent-mother returned home, MK was "fussy" and had difficulty sleeping. Respondents observed MK "twitching" in his extremities the morning and night of May 31, 2021, but no medical attention was sought. On June 1, 2021, respondent-mother brought MK to the

---

[1] *In re MK Minor*, unpublished order of the Court of Appeals, entered August 15, 2022 (Docket Nos. 361902; 362429).

doctor because of his "twitching," MK was referred to the emergency room, and then transferred by helicopter to Children's Hospital in Minneapolis, Minnesota. Doctors at Children's Hospital concluded that MK suffered from a subdural hematoma, seizures, retinal hemorrhaging, and three fractured ribs that were healing and likely fractured several weeks before.[2] The doctors concluded that MK's bruising and other injuries were consistent with physical child abuse. Both parents denied harming MK or that he experienced any physical trauma.

The trial court issued an ex parte order removing MK from respondents' care. Both respondents entered no-contest pleas, and the trial court took jurisdiction over MK and ordered that respondents participate in services. In September 2021, DHHS informed the trial court that based on its investigation into MK's injuries, it was required to request termination of respondents' parental rights at initial disposition. The trial court permitted both respondents to withdraw their pleas, which respondent-father did, but respondent-mother declined.

In October 2021, DHHS filed an amended petition regarding respondent-father and a supplemental petition regarding respondent-mother requesting termination of their parental rights under MCL 712A.19b(3)(j) and (k). The petitions repeated the original allegations, and also alleged that when MK was brought to the doctor for minor bruising before his hospitalization, doctors directed respondents to bring MK in immediately if any other issues arose. Further, the petitions alleged that DHHS never received any complaints of suspected abuse before MK's hospitalization. Separate termination proceedings were held for each respondent, and they both denied physically abusing MK. The trial court found that statutory grounds existed to terminate respondents' parental rights, and that termination was in MK's best interests.

## II. STATUTORY GROUNDS

Respondent-mother and respondent-father argue that the trial court erred by finding clear and convincing evidence to terminate their respective parental rights to MK under MCL 712A.19b(3)(j) and (k). We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews a trial court's factual findings and its statutory-grounds determinations for clear error. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Termination of parental rights under MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm under MCL 712A.19b(3)(j)

---

[2] Medical testimony during respondent-mother's termination hearing established that a subdural hematoma occurs when there is bleeding around the outside of the brain and retinal hemorrhaging occurs when there is bleeding in the eyes, and is highly suggestive of head trauma.

includes emotional and physical harm. *Sanborn*, 337 Mich App at 279. Further, termination under MCL 712A.19b(3)(j) "is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011). "When there is severe injury to an infant, it does not matter whether respondents committed the abuse at all" if there was "clear and convincing evidence that they did not provide proper care." *Id*. at 33.

The trial court found there was clear and convincing evidence that this statutory ground was met because MK's bruising, broken ribs, and brain injuries were nonaccidental and were the result of child abuse committed by one or both of the parents. The trial court, relying on *Ellis*, *id*. at 32, stated that it was irrelevant which parent harmed MK or how he was harmed given that MK was "repeatedly and seriously injured in their care." Thus, there was a reasonable likelihood, based on the conduct or capacity of respondents, that MK would be harmed if returned to their care. Even if it was impossible to determine whether respondent-mother or respondent-father perpetrated the abuse, termination of respondents' parental rights under MCL 712A.19b(3)(j) was proper because MK suffered from numerous nonaccidental injuries that likely occurred when MK was in the exclusive care and custody of respondents. *Id*. at 34-35. That both respondents denied committing the abuse is irrelevant because there was clear and convincing evidence that they failed to provide proper care of MK. *Id*. at 33. Neither parent brought MK to the doctor after witnessing his "twitching" several times over two days, even after they were instructed by doctors to bring MK to the emergency room if anything abnormal occurred. Because the evidence presented demonstrates that either respondent-mother or respondent-father "caused or failed to prevent the child's injuries," *id*. at 36, and failed to provide MK with proper care, *id*. at 33, there is a reasonable likelihood that the child will be harmed if returned to the care of the parent, MCL 712A.19b(3)(j). Therefore, the trial court did not err by finding that statutory grounds existed to terminate respondents' parental rights under MCL 712A.19b(3)(j).[3]

## III. BEST INTERESTS

Respondent-mother and respondent-father also argue that the trial court erred by finding that it was in MK's best interests to terminate their respective parental rights. We disagree.

A trial court's determination of best interests is reviewed for clear error. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502; 358503); slip op at 6-7. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Sanborn*, 337 Mich App at 272-273 (quotation marks and citation omitted).

---

[3] Given our conclusion that termination was appropriate under MCL 712A.19b(3)(j), we need not address the additional statutory ground because only one statutory ground for termination of parental rights must be proven to terminate parental rights. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). To the extent that respondent-mother advances an argument regarding reasonable efforts, we note that DHHS was not required to provide reasonable efforts toward reunification because the supplemental petition sought termination at initial disposition. *Id*. at 463.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5) and MCR 3.977(E)(4). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In determining the best interests of the child, the focus is on the child, not the parent. *In re Atchley*, ___ Mich App at ___; slip op at 7. A trial court may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id.* (citations omitted).]

A trial court may also consider "the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In this case, the trial court properly considered that MK had been in foster care since he was about three and a half months old, and the minimal amount of parenting time between MK and respondents, although there was a bond between MK and respondent-mother and MK and respondent-father. The court properly considered respondent-father's living situation, respondent-father's failure to address or provide an explanation for MK's physical abuse, MK's possibility of adoption, and MK's well-being in foster care. MK's foster parent expressed a willingness to adopt him. The trial court permissibly considered the advantages of MK's foster home over respondent-mother's and respondent-father's homes, in particular surrounding MK's safety. He no longer had unexplained bruises, and his health and development had improved. The trial court properly focused on MK's needs. Therefore, the trial court did not err by finding that it was in MK's best interests to terminate respondents' parental rights.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron