*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* F. NIKOOYI, Minor.

UNPUBLISHED
June 15, 2023

No. 363390
Macomb Circuit Court
Family Division
LC No. 2021-000218-NA

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Petitioner appeals as of right the trial court's September 26, 2022 order of adjudication, in which the court found that there was no statutory ground to exercise jurisdiction over the minor child, FN. We affirm.

## I. BACKGROUND

Petitioner is the brother of FN and the adult son of the respondents. In September 2021, petitioner independently filed a child-protection hearing petition alleging that respondents were unfit to raise FN without the supervision of the state. The petition stated that petitioner's childhood with respondents was mentally abusive and that FN has suffered similarly while living with respondents. The petition alleged that (1) respondents would yell and scream at FN during homeschooling, (2) FN cried every day in the morning and at night because sleeping in her own bed was used as a reward or punishment by respondents, and (3) FN would be grounded for long periods of time from simple activities, like going on walks, over homework. The petition further alleged that, when petitioner lived with respondents, respondents screamed at him frequently, destroyed his belongings, called him names, and called the police on him for no reason. Petitioner also alleged that FN was present during many of these incidents and that "state jurisdiction is the only option" to protect FN from "suffer[ing] the same mental wounds as the Petitioner."

In September 2022, a trial was held to determine whether a statutory ground existed for the court to exercise jurisdiction over FN. At the beginning of the trial, petitioner acknowledged that the subpoena for FN to appear and testify had not been served. Petitioner also acknowledged in his opening statement that the allegations in the petition were based off of events that took place from 2008 to 2016 when petitioner was living with respondents, and that he had not lived with FN or respondents since 2016.

Respondent-mother testified that she homeschooled FN since she was five or six-years-old, that she did not yell or scream at FN over her homework, and that she never grounded FN for any kind of academic reason. Respondent-mother admitted that she "might have raised her voice" on occasion, but said that, overall, the "homeschooling process was peaceful" and FN was "doing really well" with her studies. She also admitted that FN had trouble sleeping as a child and that sometimes she would not allow FN to sleep in respondents' bed as a form of punishment. Respondent-mother further testified that FN had friends she met within the homeschool community, stays active caring for her horses and learning taekwondo, and is up to date on her physicals. She also stated that FN wears braces and has received all necessary dental care for them. Respondent-mother testified that she never uses corporal punishment on FN and that FN "doesn't need too much disciplining." Respondent-mother testified that, while she had issues with petitioner while he lived in respondents' home, she never had any problems with FN.

Respondent-father testified that petitioner was a violent and aggressive child; petitioner punched respondent-father, tried to set respondents' house on fire, and broke the house's front window. In contrast, respondent-father stated that FN had never physically struck him, and he had never physically struck her. He also testified that FN was doing well with her schooling, interacts regularly with other children her age, does not have trouble sleeping anymore, and does not have any physical problems. Respondent-father stated that, since petitioner left respondents' home, the environment of the home had been "definitely better." He further testified that petitioner had not lived in respondents' house since 2016, only briefly visited once in 2018, and that he had not seen petitioner in person since 2018.

Petitioner testified that he believed the instability he experienced in respondents' household would continue with FN and ultimately harm her. However, he admitted that while respondents yelled at him, threw away his belongings, and called the police on him, he had never seen respondents throw away FN's belongings or threaten to call the police on her. Petitioner also confirmed that he had not seen or spoken to FN in the previous three or four years. Petitioner testified that he had never seen signs of physical abuse of FN and that he had no evidence other than his observations to establish that FN was mistreated by respondents, such as police reports, medical records, or school reports. Prior to making his closing argument, petitioner requested that the trial court order FN to appear and testify, despite petitioner's failure to serve her subpoena. The trial court declined the request.

The trial court concluded that petitioner failed to establish a statutory ground to exercise jurisdiction over FN. The court reasoned that petitioner failed to present evidence of any abuse, neglect, or anything "that would rise to the level of that [sic] statutory grounds for [jurisdiction]." The court declined to order FN to appear or testify because "the testimony by [FN] wouldn't be of any relevance to the allegations in the petition because all the allegations pertain to 2016 or prior." Thus, the court stated FN's appearance would be "akin to a fishing expedition" for information and would not affect the ability of the case to proceed. The trial court entered an order of adjudication indicating that there was no statutory ground for jurisdiction and dismissing the petition. This appeal followed.

## II. JURISDICTIONAL GROUNDS

Petitioner argues that the trial court erred when it declined to exercise jurisdiction over FN. We disagree.

We review "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "Jurisdiction must be established by a preponderance of the evidence." *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

After a petition is authorized, the trial court must hold an adjudicative hearing to determine "whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). "If a trial is held, the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. Under MCL 712A.2(b), the trial court has jurisdiction over juveniles under 18 years of age:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

The trial court correctly concluded that there was insufficient evidence to establish by a preponderance of the evidence that respondents neglected or abused FN or that their home was an unfit place for FN to live. Petitioner alleged several events that occurred from 2008 to 2016 when he was living with respondents in which they screamed at him, destroyed his gaming cards, and called the police on him. Petitioner also alleged that respondents would yell and scream at FN during homeschooling, that FN cried every day in the morning and when going to bed because sleeping in her own bed was used as a reward or punishment by respondents, and that FN would be grounded for long periods of time. However, the testimony presented at trial established that respondents do not yell or scream at FN, discipline her, or ground her regarding her homework; respondents do not use corporal punishment with FN; and respondents have never physically struck FN. Respondents also testified that FN was doing well in school, regularly interacting with children her age, participating in martial arts classes, having her medical and mental health needs met by respondents, and no longer having any sleeping issues. Respondents further stated that

they had not called the police since petitioner left their house. Although respondents testified to disciplining FN by not letting FN sleep in respondents' bed with them, we agree with the trial court that this discipline strategy was not evidence of neglect or abuse.

Petitioner admitted that he had not seen or spoken to FN in over three years, he had never seen any signs of physical abuse of FN, and he had never seen respondents destroy FN's belongings or threaten to call the police on her. Petitioner also admitted that he relied on his own observations to support the allegations in the petition, and that he did not have any evidence to prove that FN was mistreated by respondents, such as police reports, medical records, or school reports. We agree with the trial court that petitioner's observations from years ago are insufficient to establish that respondents are abusing or neglecting FN now.

Petitioner also argues that respondents did not provide any evidence to show the allegedly mentally abusive environment petitioner experienced with respondents had changed since petitioner left. However, we note the burden of proof to establish by a preponderance of the evidence that a statutory ground for jurisdiction exists falls on petitioner, not on respondents. See *In re Ferranti*, 504 Mich at 15. Therefore, it was not up to respondents to prove the conditions had changed; it was petitioner's burden to establish the alleged harm was ongoing or was likely to occur. Petitioner's testimony regarding respondents' alleged mental abuse concerned events that happened years ago. We agree with the trial court that evidence of respondents' alleged mental abuse of petitioner or FN from 2016 and earlier is too remote to establish jurisdictional grounds regarding FN. Petitioner did not present any evidence that respondents had been mentally abusive to FN since petitioner left respondents' household in 2016 or that FN was currently being harmed by remaining in respondents' care. Thus, we conclude that the trial court did not err when it found that there were no grounds to exercise jurisdiction over FN as to respondents.

III. FN'S ABSENCE FROM TRIAL

Petitioner argues that the petition should not have been dismissed without FN's testimony at trial and that the trial court abused its discretion by declining to order FN to appear or testify at trial. We disagree.

We review for an abuse of discretion a "trial court's failure to compel attendance" of a party or witness. *Cavanaugh v Cardamone*, 147 Mich App 159, 162; 383 NW2d 601 (1985). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008) (quotation marks and citation omitted).

"There is no rule requiring a party to a suit to attend court during trial." *Cavanaugh*, 147 Mich App at 162. Further, "[i]f testimony of a party is desired, attendance may be secured by subpoena . . . . A party to a suit must secure the attendance of his witnesses, whether those witnesses are opposite parties or not." *Id*. Additionally, a court "may by order or subpoena command a party or witness to appear for the purpose of testifying in open court." MCR 2.506(A)(1).

Although the trial court issued a subpoena for FN to testify at trial, the subpoena was never properly served and FN did not appear at trial. Additionally, the court had not issued an order

requiring FN to attend, so FN was not required to appear.  See *Cavanaugh*, 147 Mich App at 162. At the end of the trial, petitioner asked the court to order FN to appear and testify, but the court declined to order FN's appearance.  The trial court explicitly considered whether the case could proceed without FN's appearance and testimony, and concluded that "the testimony by [FN] wouldn't be of any relevance to the allegations in the petition because all the allegations pertain to 2016 or prior."  Thus, the court stated FN's appearance would be "akin to a fishing expedition" for information and would not affect the ability of the case to proceed.  Therefore, we conclude that the trial court did not abuse its discretion by declining to order FN to appear and testify in court because the court appropriately considered FN's absence and concluded her absence did not hinder the case.

Affirmed.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney