*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re DODSON/WILLIAMS, Minors.

UNPUBLISHED
September 14, 2023

No. 364657
Wayne Circuit Court
Family Division
LC No. 2020-000792-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the order of disposition removing JD and JW (the children) from respondent's care after finding it was contrary to the welfare of the children to remain with respondent. On appeal, respondent argues that there was insufficient evidence under MCL 712A.13a(9) to remove the children from his care. We conclude that the trial court did not clearly err by finding there was sufficient evidence to remove the children because JW received a large, unexplained, second-degree burn while in respondent's care, and respondent frequently left the children with people who were not approved to be caregivers. We affirm.

## I. BACKGROUND

Following a complaint Children's Protective Services (CPS) received alleging JW had a mark on her buttocks, petitioner removed the children from respondent's care on February 12, 2022. The children were placed in a temporary safety plan with Regina Pitts, the children's maternal great-grandmother. Subsequently, petitioner filed a petition alleging JW received a 15-inch, second-degree burn while in respondent's care. The petition alleged that JW's injury, in addition to respondent's failure to bring the children to their normal medical checkups or take JW for medical treatment for the burn, amounted to neglect, and that the children should be removed from respondent.

At the preliminary review hearing, the foster care specialist testified that on February 11, 2022, when Pitts picked up the children from Arlinda Weaver, the children's paternal grandmother, Weaver told Pitts JW had a rash that respondent and Weaver had been treating with cream. Pitts did not agree that the mark was a simple rash, and took JW to urgent care the following day. JW's mark was diagnosed as a 15-inch, second-degree burn, likely caused by hot water. When the foster care specialist discussed the burn with respondent, he claimed that he did not see the children

-1-

between February 9, 2022, and February 12, 2022. Respondent admitted JW had a tiny rash when he saw her on February 8, 2022, but stated it looked nothing like the picture Pitts took on February 11, 2022. He claimed that he thought the burn was merely a diaper rash. Respondent admitted to the foster care specialist that he left the children with Weaver for several days, despite the fact that she was not an approved caregiver and he had been told he could not leave the children with unapproved caregivers. Respondent also failed to take the children for their regular doctor appointments, allowing them to become past due for a medical examination prior to JW's injury. Based on the foster care specialist's uncontroverted testimony, the referee recommended that the petition be authorized and the children be removed from respondent. The trial court adopted the referee's recommendations. The petition was authorized, and the children were removed from respondent.

At trial, the CPS investigator testified that Dr. Tarik Garada examined JW on February 12, 2022. Dr. Garada told the CPS investigator that it was very concerning that JW had the second-degree burn that stretched from her back to her thigh. Dr. Garada opined that the burn was the result of JW being submerged in hot water. Dr. Garada further opined that JW would have screamed when she received the burn, alerting her caregiver that she was in pain. Respondent testified that JW only had a rash the last time he saw her, and claimed JW was burned while she was with Pitts. Pitts maintained JW had the burn when Pitts picked up the children from Weaver's house on February 11, 2022. Respondent claimed he could provide text messages that proved the children were with Pitts from February 5, 2022 through February 12, 2022, but respondent never produced the text messages.

The trial court found the grounds necessary for the change of plan petition had been established by a preponderance of the evidence, and granted the petition. The trial court entered an order of adjudication taking jurisdiction over the children, and then entered an order of disposition removing the children from respondent's care. Respondent now appeals as of right.

II. ANALYSIS

Respondent argues that there was insufficient evidence for the trial court to remove the children from his care. We disagree.

We review a trial court's factual findings for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (cleaned up).

Parents have a "fundamental right to direct the care, custody, and control" of their children. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). To remove a child, a trial court "must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *Id*. at 168. The court must find all of the following conditions in order to place a child in foster care:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).]

Following the February 25, 2022 preliminary hearing, the referee made specific factual findings on the record and recommended the children be removed from respondent. The trial court adopted the referee's recommendations and signed an order on February 25, 2022 indicating that: (1) it would be contrary to the welfare of the minor children to remain in respondent's custody; (2) no reasonably available service would adequately safeguard the minor children from the risk of harm; (3) continuing the children's residence with respondent would be contrary to their welfare; (4) consistent with the circumstances, reasonable efforts to prevent removal of the minor children from the home were made; and (5) conditions of custody away from the minor children's home were adequate to safeguard the minor children. After trial, the trial court found the grounds necessary for the change of plan petition had been established by a preponderance of the evidence, and granted the petition. The trial court entered an order of adjudication taking jurisdiction over the children, and then entered an order of disposition removing the children from respondent's care.

In this case, there was a significant issue regarding who had the children three to four days prior to February 12, 2022, which was when JW was examined by Dr. Garada and diagnosed with a severe burn. Dr. Garada found the 15-inch, second-degree burn on JW's body very concerning. He opined that JW sustained the burn three to four days prior to February 12, 2022. Pitts testified she did not see the children between February 5, 2022 and February 11, 2022. Though respondent contended that Pitts had the children for the week prior to February 12, 2022, he never provided the text messages that he claimed would refute her testimony. There also was evidence that respondent left the children with Weaver on multiple occasions, although she was not an approved caregiver. The evidence reflects that petitioner offered multiple safety plans and family team meetings, but respondent threatened to run away with the children when he was told that they might be placed in a safety plan to protect them. Additionally, respondent failed to take the children for their regular medical visits, thereby failing to discover JW had a heart murmur and fractured wrist.

When reviewing for clear error, we must give "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). As the finder of fact, the trial court's credibility determinations and its weighing of evidence are afforded deference by appellate courts. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011); *In re BKD*, 246 Mich App 212, 220; 631 NW2d 353 (2001). Suspicious marks on a child's body can support a finding that it is contrary to a child's welfare to remain with the parent. *Benavides*,

334 Mich App at 169.  Giving deference to the trial court's credibility findings, we conclude that the court did not clearly err by finding that JW received a severe burn while placed in respondent's care and thus the children's placement with respondent presented a significant risk of harm to both children.[1]  There is nothing in the record that leaves us with a definite and firm conviction that a mistake was made.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[1] Although only JW was physically harmed, the anticipatory neglect doctrine states that a parent's treatment of one child is probative of how they treat the other. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020).  Therefore, how respondent treated JW is probative of how he treated or would treat JD, making the trial court's finding applicable to both children.