*In re* BZ
*In re* KZ

Docket No. 253112. Submitted September 8, 2004, at Grand Rapids. Decided November 4, 2004, at 9:00 a.m.

Charles and Colleen Anderson and Wilbur and Cheryl Edgar filed petitions in the Kent Circuit Court, Family Division, supplemental to a petition filed by the Family Independence Agency (FIA) and later withdrawn by the FIA, seeking a termination of the parental rights of Emmalee Schafer and David Zimmerman to BZ and KZ pursuant to MCL 712A.19b(3)(e), (g), and (j). The Andersons were paternal relatives and guardians of BZ and sought to adopt him after termination of parental rights. The Edgars were paternal relatives and guardians of KZ and sought to adopt him after termination of parental rights. The father voluntarily relinquished his parental rights to BZ and KZ. The respondent mother moved for a change of venue for the termination proceedings relating to KZ to the Isabella Circuit Court on the basis that KZ had lived there for months with his guardians, so he was not found within Kent County as required by MCL 712A.2(b). The court, Nanaruth H. Carpenter, J., determined that it had jurisdiction and later terminated the mother's parental rights to both children. The respondent mother appealed, claiming that the court had no jurisdiction over KZ because of his residence in Isabella County, there was insufficient evidence for termination of her parental rights, and the statutory grounds for termination were not established by clear and convincing evidence.

The Court of Appeals *held*:

1. The court rules provide several bases for a court to obtain jurisdiction over a minor for the purpose of protective proceedings or termination of parental rights. Although KZ had lived in Isabella County for nearly a year, jurisdiction was proper in Kent County because the child had been placed by a Kent Circuit Court order (MCR 3.926[B][3]) and because the alleged acts that formed the basis for the underlying protective proceedings transpired there (MCR 3.926[A]). The trial court correctly determined that it had jurisdiction over KZ.

2. The statutory jurisdictional requirements for protective proceedings and the termination of parental rights are set forth in MCL 712A.2. Although the initial allegations were historical, the mother cooperated after the petition in establishing the guardianships for BZ and KZ, and the initial petition based on those allegations had been dismissed for that reason. The supplemental petitions were based on those alleged historical acts in spite of the fact that KZ was born after the time of the alleged acts in the original petition. During the guardianships, the mother was under a court-ordered family plan supervised by the FIA. The preponderance of the evidence indicated that she did not comply with or complete the family plan that could have allowed reunion. Jurisdiction was appropriately predicated on MCL 712A. 2(B)(1), (2), and (4) on the bases of this failure to comply and complete the plan and of the doctrine of anticipatory neglect. The trial court properly found that it had jurisdiction with regard to both children.

3. The statutory grounds for termination of parental rights must be established by clear and convincing evidence. The court determined that there was a failure to provide proper care and custody and there was no reasonable expectation of their provision within a reasonable time. MCL 712A.19b(3)(g). The facts indicate a pattern of instability in the mother's home, rare and sporadic visitation with the children, domestic violence, and a lack of parenting skills. Although offered the opportunity to rectify these shortfalls, the mother did not attend scheduled parenting classes, refused for a time to disclose her residential address to her social worker, and exercised visitation inadequately on both qualitative and quantitative bases. These convinced the social worker that there was no reasonable expectation that the respondent mother could provide proper care for the children within a reasonable time.

4. Given the grounds for termination found by the court by clear and convincing evidence, the respondent mother failed to show that the termination of her parental rights was clearly not in the best interests of the children. MCL 712A.19b(5).

Affirmed.

1. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — PARENTAL RIGHTS TERMINATION — JURISDICTION.

Jurisdiction for a court to hear a child protective proceeding may be based on the county of residence of the minor child, but, alternatively, may be based on other determinants such as the county in which a court has placed the child by a court order or the county

where the alleged acts that formed the basis for the underlying protective proceedings transpired (MCR 3.926[A], [B][3]).

2. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — CLEAR AND CONVINC-
   ING EVIDENCE — REBUTTAL.

   After a ground for termination of parental rights has been demon-
   strated by clear and convincing evidence, the court may refuse to
   terminate parental rights only if it specifically finds that such
   termination would not be in the best interests of the child (MCL
   712A.19b[5]).

*Mark T. Van Slooten* for the respondent.

Before: GRIFFIN, P.J., and WILDER and ZAHRA, JJ.

GRIFFIN, P.J. Respondent Emmalee Schafer appeals as of right the circuit court's order terminating her parental rights to the minor children, BZ and KZ, pursuant to MCL 712A.19b(3)(e) (failure to comply with court-structured guardianship plan, causing disruption of the parent-child relationship), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if the child is returned to the parent's home).[1] We affirm.

I

The respondent first contends that the Kent Circuit Court referee erred when he denied her motion to transfer the termination proceedings involving her son KZ to the Isabella Circuit Court.

In November 2002, less than one week after KZ was born to the respondent and David Zimmerman in Grand Rapids, a petition was filed in the Kent Circuit Court by the Family Independence Agency (FIA) to place KZ in protective custody on the ground that the

---

[1] David Zimmerman, the father of BZ and KZ, voluntarily relinquished his parental rights and is not a party to this appeal.

circumstances leading to the earlier filing of a neglect petition and the removal of the respondent's two other children, BZ and his half-sister Sierra, had not been rectified,[2] the parents had "made minimal to no progress toward their Family Plan goals," and David Zimmerman had threatened to leave the state if authorities attempted to remove the infant. Following a preliminary hearing, KZ was placed in temporary custody with the FIA. Eventually, through the parties' participation in the Kinship Program, the infant was placed with his paternal grandmother, petitioner Cheryl Edgar, in Isabella County. Under the program, the respondent and David Zimmerman consented to the filing of the petition, with the understanding that KZ would be placed in a relative's home and that a guardianship would be established through the Family Group Decision-Making program at Bethany Christian Services. The respondent and Mr. Zimmerman agreed to satisfy certain goals set forth in a family plan (similar to a case service plan used in foster care cases), including parenting classes, psychological evaluations, housing,

---

[2] The petition filed in the Kent Circuit Court in August 2002 regarding Sierra and BZ alleged that Sierra had been physically abused by David Zimmerman, and that the respondent failed to timely seek appropriate medical treatment for Sierra, whose injuries had been determined by a physician not to be accidental. In addition, the petition alleged inappropriate discipline, domestic violence, and neglect. David Zimmerman was later convicted of third-degree child abuse stemming from the incident with Sierra. The respondent and David Zimmerman entered into a compact agreement with the Kinship Program regarding Sierra and BZ, and petitioners Colleen and Charles Anderson (BZ's paternal great aunt and uncle) were appointed as BZ's guardians, and Sierra was placed with her grandmother. Once the guardianships were established, an order dismissing the petition "at the request of petitioner" was entered by the court, and Sierra and BZ continued to live with their respective guardians under the Kinship Program. Termination of the respondent's parental rights to Sierra was not requested; thus, Sierra is not involved in these proceedings.

and visitation. Once the guardianship was formally established with the Edgars, the Kent County FIA requested the withdrawal of the previously authorized petition regarding KZ, and an order dismissing the petition "at the request of petitioner" was entered by the Kent Circuit Court in January 2003.

In August 2003, the respondent wrote to petitioners and expressed the desire to have the minor children returned to her care. Both letters also indicated that the respondent and David Zimmerman were no longer in a relationship. The petitioners, the Edgars and the Andersons, then filed separate supplemental petitions in the Kent Circuit Court, which were authorized by a referee, to terminate the parental rights of the respondent and David Zimmerman to the minor children, BZ and KZ, pursuant to MCL 712A.19b(3)(b)(i) and (ii), (e), (g), and (j).

In November 2003, the respondent filed a motion to transfer KZ's case to the Isabella Circuit Court on the ground that, when the petitioners filed the supplemental termination petition, KZ had been residing with his guardians in Isabella County for almost a year. However, the referee denied the respondent's motion and proceeded to the dispositional phase of the termination proceedings. Following the presentation of proofs, the referee concluded that grounds for termination had been proved by clear and convincing evidence under subsections e, g, and j and that termination of the respondent's parental rights was not contrary to the best interests of the minor children.

On appeal, the respondent now argues that KZ had resided in Isabella County with his guardians for over ten months and continued to reside there at the time the termination petition was filed; thus, KZ clearly was not "found within [Kent] county" when the termination

petition was filed, within the meaning of MCL 712A.2(b), so as to confer jurisdiction on the Kent Circuit Court. The respondent maintains that, although the termination petition makes reference to historical events in Kent County that led to the prior authorization of a protective services petition, the petition was later withdrawn and dismissed, and there are no such current allegations. Thus, according to the respondent, the circuit court referee abused his discretion in denying her motion to transfer KZ's case to the Isabella Circuit Court. We disagree.

The resolution of this issue requires an analysis of both statutory language and court rule. Issues concerning family court procedure under the court rules present questions of law subject to review de novo. *In re CR*, 250 Mich App 185, 200; 646 NW2d 506 (2002).

Pursuant to MCL 712A.2(b), the family division of the circuit court has authority to assume jurisdiction in proceedings concerning a juvenile under eighteen years of age "found within the county." MCR 3.926(A) states, "As used in MCL 712A.2, a child is 'found within the county' *in which the offense against the child occurred* ... or in which the minor is physically present." (Emphasis added.) MCR 3.926(B) provides, in pertinent parts:

> Transfer to County of Residence. When a minor is brought before the family division of the circuit court in a county other than that in which the minor resides, the court may transfer the case to the court in the county of residence before trial.
>
> (1) If both parents reside in the same county, or if the child resides in the county with a parent who has been awarded legal custody, a guardian, a legal custodian, or the child's sole legal parent, that county will be presumed to be the county of residence.

(2) In circumstances other than those enumerated in subsection (1) of this section, the court shall consider the following factors in determining the child's county of residence:

(a) The county of residence of the parent or parents, guardian, or legal custodian.

(b) Whether the child has ever lived in the county, and, if so, for how long.

(c) Whether either parent has moved to another county since the inception of the case.

(d) Whether the child is subject to the prior continuing jurisdiction of another court.

*  *  *

(g) Any other factor the court considers relevant.

(3) *If the child has been placed in a county by court order or by placement by a public or private agency, the child shall not be considered a resident of the county in which he or she has been placed, unless the child has been placed for the purpose of adoption.* [Emphasis added.]

Here, the neglect petition and protective proceedings were initiated in Kent County when both parents and KZ were Kent County residents and where the alleged acts that formed the basis for the protective proceedings transpired. The Kent County FIA initiated the proceedings because the conditions leading to issuance of the earlier petition involving BZ and Sierra, including physical abuse, domestic violence, and neglect, had not been rectified and the safety of the newborn, KZ, in the respondent's Kent County home, was at issue. Thus, KZ was "found within [Kent] county" within the meaning of MCL 712A.2(b), because Kent County was the county where "the offense against the child occurred." MCR 3.926(A).

Moreover, as provided in MCR 3.926(B)(3), where "the child has been placed in a county by court order or by placement by a public or private agency, the child shall not be considered a resident of the county in which he or she has been placed . . . ." In this case, pursuant to the Kinship Program in Kent County, the respondent and David Zimmerman consented to the filing of the neglect petition and to the out-of-home placement of KZ with his paternal grandparents in Isabella County. Under such circumstances, where KZ was placed in Isabella County by a child welfare agency by court order, subsection B(3) applies and directly and expressly contradicts respondent's argument that KZ was not "found within [Kent] county" for jurisdictional purposes.

In addition, the cases involving BZ and Sierra were being heard in Kent County, and BZ was in a guardianship with petitioners, the Andersons, in Kent County. Consequently, the witnesses and evidence were located in Kent County, and the issues and evidence in the cases were nearly identical. Kent and Isabella counties were cooperating to serve judicial economy and the convenience of the parties and witnesses. The trial court properly noted these factors in denying respondent's motion to transfer the case to Isabella County. Applying the factors under MCR 3.926(B)(2) cited above, the same conclusion is reached. The court, therefore, did not abuse its discretion in denying the respondent's motion to transfer the case involving KZ to Isabella County.

II

The respondent next contends that the circuit court referee clearly erred when he determined that sufficient evidence existed to find that the minor children came

within the statutory requirements for the assertion of jurisdiction set forth in MCL 712A.2.[3] The respondent's argument that grounds for jurisdiction were neither demonstrated by a preponderance of the evidence nor applicable is based largely on the dismissal of the temporary custody petitions. The respondent notes that

---

[3] Specifically, MCL 712A.2 states, in pertinent parts, that the court has the following authority and jurisdiction:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

\* \* \*

(B) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

(3) Whose parent has substantially failed, without good cause, to comply with a limited guardianship placement plan described in section 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5205, regarding the juvenile.

(4) Whose parent has substantially failed, without good cause, to comply with a court-structured plan described in section 5207 or 5209 of the estates and protected individuals code, 1998 PA 386, MCL 700.5207 and 700.5209, regarding the juvenile.

as a participant in the Kinship Program, she agreed to place the children in guardianships with paternal relatives, and that after the establishment of the guardianships and withdrawal of the neglect petitions, the respective guardians became "legally responsible" for the care and maintenance of the children, MCL 712A.2(b)(1)(B); therefore, subsections b(1) and b(2) do not serve as an adequate basis for the court to assume jurisdiction over BZ and KZ. In sum, the respondent maintains that, "The allegations of the previously dismissed petitions were resurrected [despite the establishment of guardianships] merely to provide an illusory statutory basis for assuming jurisdiction and, ultimately, termination of [respondent's] parental rights." We disagree.

To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. *In re PAP*, 247 Mich App 148, 152-153; 640 NW2d 880 (2001). Jurisdiction must be established by a preponderance of the evidence. MCR 5.972(C)(1); *Ryan v Ryan*, 260 Mich App 315, 342; 677 NW2d 899 (2004); *In re Snyder*, 223 Mich App 85, 88; 566 NW2d 18 (1997). We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact, *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998).

Here, the petitions to terminate the respondent's parental rights recited historical allegations and circumstances from the dismissed petitions and court proceedings under those petitions. Clearly, however, in the interim, the courts and agencies had been working with the respondent at length to achieve reunification; the problems that led to the wardships allegedly were not rectified, and the guardians documented the fact that the respondent was taking little interest in her children. The record indicates that, under the Kinship

Program in Kent County, dismissal of an initial petition is customary once a guardianship is established and is functioning smoothly. The respondent was nonetheless still subject to the requirements of the family plan, and the preponderance of the evidence indicated that she neither substantially complied with nor completed the goals set forth in that plan. Moreover, the doctrine of anticipatory neglect would apply to these circumstances to confer jurisdiction over the minor children, on the basis of the earlier injuries to Sierra. *In re Powers,* 208 Mich App 582, 588-593; 528 NW2d 799 (1995). Jurisdiction was therefore appropriately predicated on MCL 712A.2(b)(1), (2), and (4), and the circuit court did not clearly err in determining by a preponderance of the evidence that the children came within the statutory requirements of MCL 712A.2.

III

The respondent next argues that the circuit court erred in concluding that the statutory grounds for termination of parental rights were established by clear and convincing evidence. We disagree.

Termination of parental rights is appropriate where the petitioner proves by clear and convincing evidence at least one ground for termination. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). Once this has occurred, the court shall terminate parental rights unless it finds that the termination is clearly not in the best interests of the children. *Id.* at 353; MCR 3.977(E)(3), (F)(1), or (G)(3). This Court reviews the lower court's findings under the clearly erroneous standard. *In re Sours Minors,* 459 Mich 624, 633; 593 NW2d 520 (1999). A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the

trial court's special opportunity to observe the witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000).

Here, a review of the record of the termination hearing reinforces the correctness of the trial court's conclusion that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(g) (failure to provide proper care and custody, with no reasonable expectation of such within a reasonable time). The family plan that was established for the respondent as part of the Kinship Program was admitted as an exhibit. It identified concerns, including lack of a stable environment, financial problems, "playful" behavior between the respondent and David Zimmerman viewed by the children and family as violent, and the respondent's failure to interact with BZ in a stimulating way. The respondent's "protection and safety steps" included visiting and interacting with BZ three times a week, taking a comprehensive series of parenting classes, obtaining a psychological evaluation and following its recommendations, having counseling to address depression, and obtaining new housing and financial stability.

Three quarterly reports and a summary from Bethany Christian Services and the Kinship Program were admitted into evidence as exhibits at the termination hearing. The first report, covering the period August 28 through November 28, 2002, noted, in pertinent part, that the respondent did not visit BZ regularly; when she did visit, she did not play or talk to him unless prompted. The respondent had seen KZ once, during the Thanksgiving holiday. Petitioner Cheryl Edgar reported that the respondent did not take the initiative to feed or change KZ's diaper and did not

verbally interact with him. Although the respondent underwent a psychological evaluation and attended counseling, the counselor indicated that it was difficult to be helpful when the respondent did not show much initiative.

The second quarterly report, covering the period November 28, 2002, through February 28, 2003, stated that respondent and David Zimmerman had been evicted from their new housing and then moved into separate residences. The respondent moved in with her mother and had only sporadic contact with her social worker. The respondent also did not see the minor children on a regular basis. The petitioners reported no improvement in the interactions between the respondent and her children. A Kinship Program representative had attempted to encourage more frequent and quality visits with KZ and to mediate tension between petitioner Colleen Anderson and the respondent, but the respondent was not receptive to these efforts. She had not attended the new set of parenting classes and had not continued with her counseling.

The third quarterly report covered the period from February 28 through May 28, 2003. The respondent had returned to Grand Rapids, where she was again living with David Zimmerman. She had not seen BZ or KZ regularly; over the past quarter, she saw KZ twice and BZ once. She had not inquired about BZ and the quality of the one visit was not improved. Because of a lack of consistency, the guardians were requesting twenty-four hour notice if the respondent intended to attend scheduled visits. The respondent continued to have problems in her interactions with BZ's guardian, had not begun new parenting classes, and attended counseling only sporadically. The respondent had not contacted her social worker in four weeks. Although the respondent

and Zimmerman had secured a new apartment and were up to date on their bills, overall, the social worker opined that the respondent was not meeting the goals of the family plan.

The case closure report covered the period through August 28, 2003. No significant improvements were noted. The respondent continued her employment through a temporary employment agency. The social worker had enrolled the respondent in a comprehensive parenting class for July, but the respondent had not attended any sessions. The respondent and Zimmerman continued to reside together until July 4, when she and her family said the relationship became physically abusive and she did not wish to expose her children to Mr. Zimmerman. Zimmerman gave a different story, stating that the respondent was seeing another man and had moved in with him. Previously, the respondent and Zimmerman had admitted hitting, pushing, and slapping each other during arguments. During this period, Zimmerman married a previous girlfriend who was the mother of his son.

For several weeks after she moved away from David Zimmerman, the respondent was unwilling to disclose her whereabouts to the social worker. At the closing session, she stated that she had been staying at the home of a co-worker and his parents, along with four other adults and one baby, in a six-bedroom home. Although the social worker did not tour the home, she opined that it was inappropriate for the respondent and her two children.

With regard to visitation, it was reported that there had been no improvement in the quality or quantity of visits with BZ. The respondent also was not consistent in visiting KZ. Consequently, petitioners discontinued the visits with the minor children in June and July

2003. Moreover, concerns persisted regarding the respondent's mental health. There were reports of "unusual and angry behaviors" on the part of the respondent from her family members. As a result, the social worker referred the respondent for depression screening, but the respondent did not schedule an appointment for six weeks and then provided no confirmation that she had attended.

At the termination hearing, the social worker responsible for overseeing the respondent's case testified that, while the respondent may have completed one or two of the goals of the family plan, most were not accomplished. The respondent's housing was not stable; she had moved five or six times and now was staying with friends. Although this social worker and another social worker had met repeatedly with the respondent to go over the plan and provide her with community resources, the social worker testified that the respondent had failed to comply with their requests. In the social worker's opinion, the respondent was no better able to provide a safe, stable, suitable home than when the children were taken into protective custody. The social worker opined that, on the basis of the respondent's performance, there was no reasonable expectation that she could provide proper care within a reasonable time.

In light of the above evidence of record, we conclude that the trial court did not clearly err in finding that § 19b(3)(g) was established by clear and convincing evidence. *In re Sours Minors, supra.* Although respondent maintained employment and ultimately separated from her abusive boyfriend, she only minimally complied with the more important aspects of the family plan, including visitation with the children. See *In re Trejo, supra* at 346 n 3 (a parent's failure to substantially comply with court-ordered treatment plans is

indicative of neglect), and 360-363 (holding that the family court did not clearly err in finding that evidence of the respondent's slow progress in counseling established the termination under subsection 19b[3][g]).

Further, we hold that the respondent failed to show that termination of her parental rights was clearly not in the best interests of the minor children. Once a statutory ground for termination is established by clear and convincing evidence, the trial court must terminate parental rights unless it finds from the whole record that termination clearly is not in the child's best interests. MCL 712A.19b(5); *Trejo, supra* at 353. The trial court's decision on the best interests question is reviewed for clear error. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003); *Trejo, supra* at 356-357.

Here, the record clearly indicates that the respondent did not visit the children as specified in the family plan and had minimal meaningful contact with her sons, thus virtually precluding the development of any family bonds. Conversely, the case closure report indicated that all three children had flourished under the care of guardians. BZ had "returned to a normal track of development, given his deficiencies at the time of placement." KZ had some delays in motor development, but was making progress with community services, and petitioners had expressed an interest in adopting both the minor children. Under these circumstances, we conclude that the court did not clearly err in determining that termination of the respondent's parental rights was not contrary to the children's best interests. MCL 712A.19b(5); *In re Trejo, supra.*

Affirmed.