# STATE OF MICHIGAN

# COURT OF APPEALS

In the Matter of HARRISON, Minors.

UNPUBLISHED
April 14, 2016

No. 328271
St. Clair Circuit Court
Family Division
LC No. 14-000112-NA

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(g) and (j). We affirm.

Respondent first contends that the trial court erred in finding that there was sufficient evidence to bring the children within the jurisdiction of the court. The factfinder must find by a preponderance of the evidence that one or more of the grounds for the assumption of jurisdiction over the child under MCL 712A.2(b) have been established. *In re SLH*, 277 Mich App 662, 673-674; 747 NW2d 547 (2008); *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court reviews the trial court's decision to exercise jurisdiction for clear error in light of its factual findings. *Id*.

Upon our review of the evidence presented at the hearing, we conclude that the trial court did not clearly err in finding that one or more of the grounds for the assumption of jurisdiction over the children was established by a preponderance of the evidence. The evidence was sufficient to show that the children's mental well-being was subjected to a substantial risk of harm and that respondent created an atmosphere, through his violent and intimidating conduct, that made the home an unfit place for the children. Accordingly, the trial court did not clearly err in finding by a preponderance of the evidence that one or more of the grounds for the assumption of jurisdiction over the children under MCL 712A.2(b) had been established.

The trial court also did not clearly err by proceeding directly to the termination hearing immediately after finding that it had jurisdiction. Respondent did not raise the objection in the trial court, so he must show a plain error affecting his substantial rights. *In re Hildebrant*, 216 Mich App 384, 389; 548 NW2d 715 (1996). The supplemental petition, filed on April 21, 2015, sought termination of respondent's parental rights. Therefore, both MCL 712A.19b(4) and MCR 3.977(E) permitted the trial court to proceed directly to the termination hearing at the initial dispositional hearing.

Finally, respondent contends that the trial court clearly erred in finding clear and convincing evidence to support the statutory grounds for termination. MCR 3.977(K); *In re Sours*, 459 Mich 624, 632-633; 593 NW2d 520 (1999). The evidence supports the trial court's decision under both MCL 712A.19(b)(3)(g) and (j).

The record showed that the home environment was chaotic. Respondent was verbally abusive to the children's mother. He was condescending and constantly intimidated her, exacerbating her mental health problems to the extent that she was hospitalized. Respondent tried to intimidate the Children's Protective Services (CPC) worker, and the mother and children were afraid of him. Respondent provided no income for the family, and the children's food and home and other needs were provided through the mother's SSI income. Additionally, the children were essentially relegated with the mother to the upper floor of the home. This isolation resulted in language delays in the two older children.

The evidence also showed that during visitation, respondent did not speak with his children. He did not know how to interact with them and, after ten months of discussions and services, he had made no progress. The visits were chaotic, as respondent did not know how to discipline or maintain order with the children. Respondent's lack of interaction with the children was discussed at several family team meetings, but respondent never demonstrated any progress and never progressed beyond supervised visitation. The children were essentially nonverbal and had delays in speech and cognitive understanding. In addition, they were diagnosed with autism, and respondent had no understanding of their special needs. The children were more bonded to the foster parents than with respondent. In ten months, despite numerous discussions with the workers and the referrals to services, respondent did not improve his parenting.

The trial court also did not clearly err in finding that respondent would not provide a safe and adequate home for the children. Before the children were removed from the home, Families First was placed in the home for an extended for a period of time, but the agency was unable to prevent removal of the children because respondent refused to cooperate. When the mother finally left the home and stopped paying the bills, respondent was evicted. The Veterans Administration helped him to obtain a new home, in which respondent was still living with two unrelated women who paid all the bills. Respondent had no legal source of income, and he testified that he received "donations" from some computer work he performed and videos he made, but he never produced any verification of this. He reported that he could not be employed because of his heart condition, and he was still waiting to hear whether he would receive SSI.

There was also no improvement in respondent's mental health issues. Respondent refused to complete his initial psychological assessment. He was referred for a second assessment in September 2014, and did not complete it until February 2015. He refused to accept the diagnoses and was upset about his evaluation. He started counseling, but his case was closed for noncompliance. After ten months of involvement with CPS and a number of referrals, respondent finally started attending counseling when he learned that a petition for termination would be filed. He had attended only a couple sessions by the time of the termination hearing, and he testified that it did not feel like "treatment," because he did not need mental health treatment.

Additionally, respondent had prior convictions for domestic violence and assault but refused to attend a domestic violence program. One of his convictions arose out of violence that occurred in the home while the children were present. Nevertheless, he claimed that he was the victim of domestic violence and did not need a class in domestic violence.

Respondent was, according to the evidence, deceitful. As the trial court found, respondent lied to his first psychologist, reporting active military combat and claiming that he killed enemies in hand-to-hand encounters and was wounded in combat. He claimed he suffered from posttraumatic stress disorder (PTSD) as a result, but in actuality respondent never saw any combat while in the services and was dishonorably discharged from his second term of service for inappropriate behavior after receiving 28 driving infractions in one month. When respondent took his second evaluation, he reported that he lied a lot because he enjoyed the reaction, and admitted that he had been lying to the agencies and staff. In fact, respondent told so many lies that the trial court found it impossible to know whether his testimony was truthful. The second psychologist diagnosed respondent with anti-social personality disorder, histrionic personality traits, sadistic personality features, generalized anxiety, bi-polar disorder, manic and severe without psychotic features, and alcohol use. However, respondent continued to deny that he had any mental health needs.

The evidence clearly showed that respondent had failed to provide proper care or custody for his children. Therefore, there was clear and convincing evidence to support termination under MCL 712A.19b(3)(g). For these same reasons, there was clear and convincing evidence to support a finding that, based on respondent's conduct and his denial of any need for mental health help, the children would be harmed if they were returned to the home. MCL 712A.19b(3)(j).

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan