*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEGOAS, Minors.

UNPUBLISHED
September 21, 2023

Nos. 364682; 364683
Oakland Circuit Court
Family Division
LC No. 21-883857-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In these consolidated appeals, respondents appeal by delayed leave granted[1] the trial court's August 24, 2022 order, finding statutory grounds to exercise jurisdiction over respondents' minor children, CL and BL, under MCL 712A.2(b)(1) (parent neglects or refuses to provide proper or necessary medical care or other care necessary for the children's health), and (2) (the home is an unfit place for the children to live because of neglect), and finding statutory grounds to terminate respondents' parental rights under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical abuse), (b)(*ii*) (parent failed to prevent physical injury or physical abuse), and (j) (reasonable likelihood of harm if children returned to parent). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On September 26, 2021, it was determined BL, who was two months old at the time, had a fracture to his right humerus. Child Protective Services (CPS) was contacted. Respondents, who were BL's sole caretakers, denied they caused the injury. Respondent-mother opined the injury could have been caused when she briefly left BL and three-year-old CL alone in a vehicle together on September 21, 2021. As part of a safety plan, the children were placed with their maternal grandparents. On October 22, 2021, BL underwent a bone survey because of "concern for nonaccidental trauma." A radiologist compared BL's previous diagnostic testing with the October 22, 2021 results. It reflected, in relevant part, that BL had "a healing fracture" to his right humerus.

---

[1] *In re Legoas Minors*, unpublished order of the Court of Appeals, entered March 9, 2023 (Docket Nos. 364682 and 364683).

It was noted "[t]he previously described irregularities at the distal aspect of the left radius and ulna are no longer appreciated. . . . The previously described irregularities at the distal aspect of the right femur are no longer appreciated."

Petitioner filed a petition, requesting the trial court authorize the petition, exercise jurisdiction, and terminate respondents' parental rights. The petition alleged BL suffered from fractures to his humerus, femur, and radius. It was further alleged BL had subconjunctival bleeding in his bilateral eyes. After a preliminary hearing, the trial court authorized the petition. The children continued to be placed with their maternal grandparents, and respondents were permitted to have supervised parenting time.

In June and July 2022, a combined adjudication trial and statutory grounds hearing was held. The parties stipulated to the admission of the October 22, 2021 radiology report into evidence. Respondent-mother and Children's Protection Specialist Rosanna Kuzmyn testified. Expert testimony was not presented. Respondent-mother testified she believed CL caused BL's injury on September 21, 2021. However, Kuzmyn did not believe respondent-mother's theory was feasible. During cross-examination, Kuzmyn was questioned extensively about the October 22, 2021 radiology report. Although Kuzmyn stated she was not familiar "with all the medical terms," she later agreed the October 22, 2021 radiology report only supported that BL suffered a fracture to his humerus. The parties' closing arguments support the understanding that the evidence supported that BL only suffered from a fractured humerus. The trial court exercised jurisdiction under MCL 712A.2(b)(1) and (2), and found statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j). The trial court found respondent-mother's theory as to how BL's humerus was fractured was not feasible. The best-interests hearing was scheduled to be held at a later date.

Respondents filed delayed applications for leave to appeal from the August 24, 2022 order. We granted leave, *In re Legoas Minors*, unpublished order of the Court of Appeals, entered March 9, 2023 (Docket Nos. 364682 and 364683), and consolidated the matters, *In re Legoas Minors*, unpublished order of the Court of Appeals, entered May 31, 2023 (Docket Nos. 364682 and 364683). The trial court proceedings were stayed pending the outcome on appeal. Thereafter, petitioner and the lawyer-guardian ad litem (LGAL) moved this Court to remand the matter to the trial court, arguing it was necessary to present expert testimony to support that BL suffered from multiple injuries in September 2021, that were indicative of child abuse. Petitioner and the LGAL submitted the affidavit of Dr. Bradley J. Norat, who treated BL in September 2021. According to Dr. Norat, BL suffered from a newly fractured humerus on September 26, 2021. Additionally, BL had a fractured radius and femur, which were in the process of healing, and displayed hemorrhaging to his eyes. Dr. Norat, who has been qualified as an expert in child abuse in the past, opined the injuries could not have been caused by accidental trauma. We denied the motion without prejudice. *In re Legoas Minors*, unpublished order of the Court of Appeals, entered June 1, 2023 (Docket Nos. 364682 and 364683).

## II. ADJUDICATION

Respondents argue that the trial court clearly erred in determining by a preponderance of the evidence that the children came within its jurisdiction under MCL 712A.2(b)(1) and (2). We disagree.

## A. STANDARDS OF REVIEW

"To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 364195); slip op at 2 (quotation marks and citation omitted). "We review the interpretation and application of statutes . . . de novo." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

> This Court reviews a lower court's determination of jurisdiction for clear error in light of the court's finding of fact. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses. [*In re Miller*, ___ Mich App at ___; slip op at 2 (quotation marks and citations omitted).]

## B. RELEVANT AUTHORITY

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Pederson*, 331 Mich App 445, 463-464; 951 NW2d 704 (2020) (quotation marks and citation omitted). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id*. at 464. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). If a trial is held, the trier of fact must find that one or more of the statutory grounds for jurisdiction have been proven by a preponderance of the evidence. *Id*. "Proof by a preponderance of the evidence means that the evidence that a statutory ground alleged in the petition is true outweighs the evidence that that statutory ground is not true." M Civ JI 97.37.

In relevant part, MCL 712A.2 states:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . . [MCL 712A.2(b)(1) and (2).]

"Because MCL 712A.2 speaks in the present tense, . . . the trial court must examine the child[ren]'s situation at the time the petition was filed. To properly find jurisdiction over [] child[ren], at least one statutory ground must be proven." *In re Miller*, ___ Mich App at ___; slip op at 5 (first alteration in original; quotation marks and citations omitted).

## C. APPROPRIATE EVIDENCE TO CONSIDER RELATING TO THE TRIAL COURT'S JURISDICTIONAL DECISION

As noted by respondents, petitioner relies extensively on evidence that was presented at the December 3, 2021 preliminary hearing to support the trial court did not clearly err by finding statutory grounds to exercise jurisdiction. Specifically, petitioner relies on Kuzmyn's December 3, 2021 testimony. This is improper. At the December 3, 2021 hearing, Kuzmyn often relied on the out-of-court statements of medical providers to support that BL suffered from multiple injuries. This testimony amounts to hearsay. See MRE 801(c). While this testimony was proper in the context of the preliminary hearing, see MCR 3.965(B)(12), the rules of evidence applied at the adjudication trial, see MCR 3.972(C)(1). Additionally, there is no indication the trial court was aware of this testimony. Indeed, the trial court did not preside over the December 3, 2021 preliminary hearing. Therefore, we will only consider the evidence presented at the adjudication trial when analyzing the trial court's finding that it was proper to exercise jurisdiction.

Petitioner also argues that the October 22, 2021 radiology report supports that BL suffered from fractures to his left radius and right femur, which were in different stages of healing than the right humerus fracture. However, expert testimony was necessary to interpret the radiology report. Indeed, interpreting a radiology report requires knowledge that belongs more to an expert than to the common person. See *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 215; 457 NW2d 42 (1990). Additionally, expert testimony would have undoubtedly aided the trial court in making its ultimate decision. See *id*.

The need for expert testimony is highlighted by the confusion that ensued at the adjudication trial. Indeed, Kuzmyn and the attorneys appeared to be confused as to the meaning of the term "appreciated." After being asked about the October 22, 2021 radiology report, Kuzmyn noted she was "not familiar with all the medical terms. . . ." Later, when asked if the "only evidence" presented supported "evidence of one humerus fracture," Kuzmyn responded: "Yes, sir." Petitioner conceded this during closing arguments, noting that "at least at some point," "there was a thought of . . . another break in the left radius and the right femur but those were not appreciated following further investigation by the doctors." Respondents and the LGAL also solely focused on the humerus fracture during closing arguments. We decline to analyze the October 22, 2021 radiology report without the benefit of expert testimony. We also decline to consider evidence that BL had conjunctival bleeding in both eyes when deciding whether the trial court properly exercised jurisdiction. Indeed, no evidence concerning bleeding in BL's eyes was presented at the adjudication trial.

## D. THE TRIAL COURT'S DECISION TO EXERCISE JURISDICTION UNDER MCL 712A.2(b)(1)

With respect to the trial court's decision to exercise jurisdiction under MCL 712A.2(b)(1), the trial court found BL's right humerus was fractured and respondents did not have a plausible explanation for the fracture. The trial court did not clearly err. As noted by the trial court, respondent-mother testified she and respondent-father cared for the children at all relevant times. Thus, it reasonably follows BL was in the care of both respondents, respondent-father, or respondent-mother when the injury occurred.

Respondents were initially unable to explain how the injury occurred. Later, however, respondent-mother opined that BL was injured on September 21, 2021, when he was alone in the vehicle with CL for 30 seconds to one minute. Respondent-mother believed CL grabbed BL's arm or hit BL's arm. The trial court found this explanation to be implausible. While respondents are correct that there is no medical evidence to support that the explanation is not plausible, CL was only three years old when the injury occurred. It is reasonable to question how CL could have broken BL's humerus in such a short period of time when he was partially restrained in a car seat. Moreover, BL was seen by medical professionals on September 25, 2021. According to respondent-mother, they fully evaluated BL, and a fractured humerus was not detected. This evidence supports BL did not fracture his humerus on September 21, 2021, as opined by respondent-mother.

Even if CL did cause BL's injury, the injury would have occurred on September 21, 2021. Respondent-father did not notice the injury despite being BL's sole caregiver for twelve hours each day in the three days following September 21, 2021. Although BL was exhibiting signs of distress, respondent-mother did not take BL to receive medical attention until the evening of September 25, 2021. Consequently, even if CL caused the injury on September 21, 2021, respondents failed to detect it for several days. A preponderance of the evidence supports respondents, who were legally responsible for the care and maintenance of BL, neglected to provide BL with the proper or necessary medical care. See MCL 712A.2(b)(1).

While there is no evidence respondents failed to properly care for CL, "the doctrine of anticipatory neglect allows an inference that a parent's treatment of one child is probative of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). Given the lack of evidence the children had different needs, evidence of respondents' treatment of BL is highly probative of how respondents will treat CL. See *id*. The trial court did not clearly err in determining by a preponderance of the evidence that CL came within the statutory requirements of MCL 712A.2(b)(1). Because it was proper for the trial court to exercise jurisdiction under MCL 712A.2(b)(1), we need not specifically consider the additional ground upon which the trial court based its decision.[2] See *In re Miller*, ___ Mich App at ___; slip op at 5 (only one statutory ground must be proven to properly find jurisdiction over children). Given this holding, it is unnecessary to consider whether it is proper to remand the matter to the trial court for consideration as to whether a new adjudication trial is necessary.

### III. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

---

[2] Respondents argue the trial court failed to consider their circumstances individually and instead considered them "jointly." However, evidence presented at the adjudication trial established respondents were BL's sole caretakers. It is undisputed BL suffered from a fractured humerus. Respondent-father did not offer an explanation as to how the injury occurred, and respondent-mother did not offer a plausible explanation as to how the injury occurred. Given the record evidence, the trial court was left with no choice but to consider respondents jointly.

Respondents next argue the trial court clearly erred by finding that statutory grounds for terminating their parental rights were established by clear and convincing evidence under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j). We agree.

## A. STANDARDS OF REVIEW

"We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). "We review the interpretation and application of statutes . . . de novo." *In re Ferranti*, 504 Mich at 14.

## B. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App at 472 (quotation marks and citation omitted). Importantly, the clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *Id.* (alteration in original; quotation marks and citation omitted).

> Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks and citation omitted).]

The trial court "may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial . . . ." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). The trial court may also consider "any additional relevant and material evidence that is received by the court at the termination hearing . . . ." *Id.* Thus, we will consider all the evidence presented at the combined bench trial and statutory grounds hearing when analyzing whether the trial court clearly erred by finding statutory grounds for termination of respondents' parental rights. For the reasons already discussed above, we will focus solely on BL's humerus fracture.

The trial court found grounds for terminating respondents' parental rights were established under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j). In relevant part, MCL 712A.19b(3) authorizes termination when:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

As argued by petitioner, this Court has held that termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j), "is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011). In *In re Ellis*, the respondents lived together in a small apartment and were the only individuals who provided care for their child. *Id*. at 35. Expert testimony at trial indicated the child "suffered numerous nonaccidental injuries" that were "highly indicative of child abuse, using a very high force of impact, and inconsistent with any sort of accident." *Id*. at 32, 35. The injuries "were in various stages of healing," which allowed for an inference that the child "had suffered multiple instances of abuse over a prolonged time." *Id*. at 35. A physician testified that, because of the injuries, the child would have "shown signs of distress at least periodically." *Id*. The respondents were unable to "offer any plausible alternative explanation" for the child's injuries. Based on this evidence, this Court concluded "the trial court properly determined that at least one of [the respondents] had perpetrated the abuse and at least one of them had failed to prevent it; consequently, it did not matter which did which." *Id*.

This case bears some similarities to *In re Ellis*. Indeed, like the parents in *In re Ellis*, respondents lived together and were the sole caretakers of BL, who is purported to have been abused and injured. However, as noted by respondents, unlike in *In re Ellis*, expert testimony was not presented to support BL's humerus fracture was intentionally inflicted. Only respondent-mother and Kuzmyn testified at the combined adjudication trial and statutory grounds hearing. Kuzmyn noted she spoke with Dr. Norat. However, Kuzmyn's testimony about this is not clear. When asked if she did not believe respondent-mother's explanation for BL's fractured humerus, Kuzmyn stated: "This was her explanation and consulting with the [sic] Dr. Norat did not agree that the (audio cut out) explanation."[3]

Additionally, as noted by respondents, in *In re Ellis*, it was significant the child had numerous nonaccidental injuries in various stages of healing, and there was testimony the child would have shown signs of distress because of his injuries. *In re Ellis*, 294 Mich App at 35. Those facts allowed for an inference that the abuse would have been apparent to the nonabusive parent, given that it occurred on more than one occasion and over an extended period of time. *Id*. As noted by respondents in this case, however, the parties and the trial court focused solely on one

---

[3] Although the trial occurred in the summer of 2022, for some reason the combined adjudication trial and statutory grounds hearing was conducted remotely.

injury: the fractured humerus. Therefore, there is no record evidence to support that BL suffered injuries before, at the earliest, September 21, 2021, and, as a result, it reasonably follows that the nonabusive parent would not have been able to detect any injuries on BL before that date. The record is also devoid of any evidence suggesting CL sustained any injuries indicative of child abuse. Indeed, it is undisputed respondents had not been involved in a CPS investigation before the proceedings at issue in this appeal. There is nothing to suggest the nonabusive parent was aware of the need to protect the children from an abuser.

As already stated, the clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" See *In re Pederson*, 331 Mich App at 472 (alteration in original; quotation marks and citation omitted). Because it was not established by clear and convincing evidence that either respondent abused BL, the trial court clearly erred by finding statutory grounds to terminate respondents' parental rights under MCL 712A.19b(3)(b)(*i*). Additionally, because it is unclear who or what caused BL's humerus fracture and because the record does not support that either respondent failed to prevent abuse, the trial court also clearly erred by finding statutory grounds to terminate respondents' parental rights under MCL 712A.19b(3)(b)(*ii*). For these same reasons, the trial court clearly erred by finding statutory grounds to terminate respondents' parental rights under MCL 712A.19b(3)(j). Cf. *In re VanDalen*, 293 Mich App 120, 140-141; 809 NW2d 412 (2011) (holding termination of the respondents' parental rights was proper under MCL 712A.19b(3)(j) where expert testimony established the children's "injuries were the direct result of repeated, brutal abuse perpetrated by [the] respondents").

## IV. CONCLUSION

We affirm the trial court's decision to exercise jurisdiction. However, we reverse the trial court's finding that statutory grounds existed to terminate respondents' parental rights and remand to the trial court for further proceedings. If petitioner continues to seek to terminate respondents' parental rights at the initial dispositional hearing on remand, the trial court must make the requisite findings of aggravated circumstances under MCL 712A.19a(2)(a). We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

-8-