*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PATRIDGE/FREESTONE, Minors.

UNPUBLISHED
October 26, 2023

No. 365984
St. Joseph Circuit Court
Family Division
LC No. 2023-000191-NA

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order removing the minor children from her care and custody. We affirm.

## I. FACTUAL BACKGROUND

A petition was filed in this case in March 2023, stating that mother had recently been housed at a domestic-violence shelter in Three Rivers, Michigan, but that she and her children were now homeless because she had been asked to leave the shelter. The petition stated that "[a] Child Protective Services (CPS) investigation was opened on February 28, 2023 after receiving allegations of neglect and improper supervision." According to CPS and staff at the domestic-violence shelter, mother "would allow [MP] to wander the building unsupervised for several hours before looking for him," and had to be reminded multiple times to change [MH]'s diaper. The petition further alleged that at one point, mother left the domestic-violence shelter with HF and MF, but left MP in the care of another resident, who in turn asked her sister to watch MP. MP ended up at a local hotel with the resident's sister. Mother later came back to pick up MP.

The petition also alleged that mother has a history with methamphetamine and that her parental rights to two other children were terminated in 2013 after methamphetamine was found in her home and she failed to benefit from substance abuse services. The petition further indicated that mother's substance abuse issues had affected the physical health of MP, HF, and MF: MP was born addicted to methadone, HF's meconium tested positive for amphetamines, methadone, and a methadone metabolite after her birth, and MF was born positive for amphetamines and spent time in the neonatal intensive care unit for methadone withdrawal.

-1-

A preliminary hearing was held in this matter, but mother did not appear for the hearing. Amie Mourey, an investigator at the Department of Health and Human Services (DHHS), explained:

> We've tried to reach [mother] by phone. She did report to the Three Rivers Police Department yesterday and [said] she was going to bring the kids there last night, which she, unfortunately, did not. She did have contact with her Families First worker yesterday, and they have another appointment scheduled for today and she was told that she does need to bring the children. So we're hoping that she will show up with them . . . .

The trial court adjourned the preliminary hearing. Mother attended a continued preliminary hearing later in the same month. At the hearing, Mourey testified that the DHHS received an initial intake in this case in late February 2023. When asked what concerns led to the initial referral, Mourey explained:

> There was a concern that mom was going to be homeless because she was staying at a shelter that her time had run up—run out on, and she was going to have to move by March 10th. And she—there were allegations of an unexplained bruise or scratch on [MP]'s face, and there was a concern for physical abuse, as well as some things that she had said to him that were found to be, potentially, mentally harming [MP].

Mourey verified that services were offered to mother through an organization called Families First. Mother attended an initial appointment, but failed to attend a second follow-up appointment, leading the organization to close services.

Mourey attested that she had several other concerns regarding mother's parenting skills throughout her investigation. For instance, Mourey overheard mother call MP a "liar," and when Mourey asked mother what MP lied about, mother could not tell her. Mourey observed that mother was not very observant of the children, and stated that the staff at the domestic violence shelter was concerned about the children because mother would leave the children unattended for "long periods of time." Additionally, mother surrendered the children to petitioner's temporary custody on March 16, 2023, at which point she tested positive for amphetamines and marijuana. Regarding mother's parenting time, Mourey stated that the DHHS supported supervised parenting time.

After the close of testimony, the trial court made the following preliminary findings:

> Well, the court, based on the testimony that we heard from Ms. Mourey today, can find that custody of the children with the mother . . . would present a substantial risk of harm toe [sic] the children's life, physical health, or mental well-being. There were problems, [o]f course, that caused DHHS to get involved. Maybe the initial issue was an imminent lack of housing at the domestic shelter. The agency did meet with mom and attempted to arrange services that would address that imminent lack of housing.
>
> Unfortunately, the services that would have been available and were—and that [mother] was informed of, that would have rectified that homelessness—

homelessness situation were not followed through with by mom. The—instead, the mother simply left—well, she didn't have any real options. She was facing an imminent last day of being able to stay there, anyway.

But leaving and not keeping in touch with DHHS about the services that could have been offered, that would have rectified that homelessness situation. And then, leaving [MP] in the presence—or in the custody actually, [of] some other person at the shelter who didn't have any authority—any legal authority. Had medical attention been needed, had any other kind of services for [MP] . . . been needed, that person would not have had any authority to obtain those services.

\* \* \*

Other services could, potentially, have been available to adequately safeguard the children from the risk, that risk being the homelessness, the indicia of illegal drug abuse by the mother, the lack of follow-through with medical appointments that the agency was able to discover. There were—there was an attempt to provide services, other than removal, to address those concerns, but mom didn't attend a meeting with [Families First] that would have addressed and allowed for services to be provided. Mom simply left with the children without maintaining contact with DHHS for a week. So, the services that could have been implemented weren't working and the only option left to the agency was removal of the children.

\* \* \*

So, because of those reasons, continuing the children's residence in the home, and—mom, you're going to have an opportunity to follow through with DHHS about your present living circumstances and whether those circumstances might be appropriate. But at least as of now, the agency doesn't even know what home residence would be for the children, so there's no option for continuing the children's residence in the mother's home as the agency knows about, at this point in time.

\* \* \*

And given the fact that that foster home is licensed, the Court can presume that those conditions are adequate to safeguard the health and welfare of the children. So, based on those findings, the Court will authorize the petition for filing.

The trial court entered an order authorizing the children's removal from mother's custody and ordered that mother be allowed supervised parenting time pursuant to DHHS policy. This appeal followed.

-3-

## II. ANALYSIS

Mother argues that insufficient evidence was presented to the trial court to justify the removal of the minor children. We disagree.

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004) (citation omitted). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

Jurisdiction must be established by a preponderance of the evidence. *Id*. at 295 (citations omitted). If a child is in protective custody, the trial court may exercise jurisdiction if it finds that all of the following criteria exist:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9); see also MCR 3.965(C)(2).]

After hearing evidence at the preliminary hearing, the trial court focused on the children's circumstances as a whole in conjunction with mother's willingness to receive and participate in services, and gave a lengthy rationale for assuming jurisdiction. Regarding the first statutory factor, the court noted that ample evidence supported a finding that custody with mother presented "a substantial risk of harm" to the children. See MCL 712A.13a(9)(a). We agree. Of particular concern is the fact that mother was on the verge of homelessness when the preliminary hearing occurred. Also of note is mother's history of substance abuse. All three of the children in this case tested positive for methadone and/or amphetamines at birth, and during the investigation of this case, a glass pipe used for smoking methamphetamine was found in a car that mother was using to drive the minor children and another resident's child. According to Mourey, mother allegedly asked the other resident's child to dispose of the pipe before the police arrived. Mother denied ever possessing the pipe and refused to submit to a drug test. However, when mother surrendered the children to petitioner's temporary custody in March 2023, she tested positive for amphetamines and marijuana.

The court also heard testimony from Mourey regarding her parenting concerns. Mourey testified that mother was not very observant of the children. Staff at the domestic-violence shelter noted that mother would leave the children unattended for "long periods of time." The children's medical records were also submitted as evidence, and indicated that none of the children had been to the doctor since August 2022. This was particularly concerning, given that the youngest child was only nine months old at the time of the preliminary hearing. In light of mother's impending homelessness, substance abuse issues, and parenting issues, we agree that the trial court did not clearly err by determining that the first statutory factor was met.

Regarding the second statutory factor, which states that jurisdiction is proper if "[n]o provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk," MCL 712A.13a(9)(b), the trial court reasoned that petitioner attempted to provide services to mother before advancing to removal, but mother did not attend a meeting regarding services and failed to maintain contact with petitioner. Overall, the record indicates that mother failed to show a willingness to participate in services designed to help rectify the issues caused by mother's impending homelessness and prevent the children's removal. Thus, the trial court did not clearly err by determining that this statutory factor was met.

Regarding the third statutory factor, under which "[c]ontinuing the child's residence in the home is contrary to the child's welfare," MCL 712a.13(a)(9)(c), the trial court heard evidence of mother's imminent homelessness and reasoned that the lack of stable housing was sufficient to support taking jurisdiction over the children. The court specifically noted that "at least as of now, the agency doesn't even know what home residence would be for the children, so there's no option for continuing the children's residence in the mother's home as the agency knows about, at this point in time." As was the case with the first statutory factor, we agree that mother's unstable housing situation and impending homelessness supported the trial court's decision to exercise jurisdiction over the children. Thus, the trial court did not clearly err by determining that this statutory factor was met.

The trial court also heard ample evidence regarding the fourth statutory factor, which provides that exercising jurisdiction is appropriate where, "[c]onsistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child." MCL 712A.193a(9)(d). The record indicates that mother failed to attend three scheduled meetings since the investigation opened in February 2023, including a meeting with Mourey, a meeting with Families First, and a family team meeting. Parenting services were canceled because mother did not attend a second scheduled meeting. On this record, mother was offered services designed to prevent the need for the children to be removed, and she did not take advantage of them. Therefore, the trial court did not clearly err by determining that this statutory factor was met.

Finally, as for the fifth statutory factor, which provides that jurisdiction is proper where "[c]onditions of child custody away from the parent are adequate to safeguard the child's health and welfare," MCL 712A.13b(9)(e), the trial court stated that, "given the fact that that foster home is licensed, the Court can presume that those conditions are adequate to safeguard the health and welfare of the children." There does not appear to be any clear error in the trial court's determination that this statutory factor was met. Accordingly, we conclude that mother's claim that the trial court erred by assuming jurisdiction over the children must fail.

## III. CONCLUSION

For the foregoing reasons, the trial court's order assuming jurisdiction over the minor children is affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates