*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DAVIS/BOND, Minors.

UNPUBLISHED
August 11, 2025
12:31 PM

No. 373166
Hillsdale Circuit Court
Family Division
LC No. 23-000260-NA

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order terminating her parental rights to the minor child, BD, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).[2] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In May 2023, respondent-mother gave birth to a minor child, RD.[3] At the hospital, respondent and RD both tested positive for amphetamines, methamphetamines, opiates, and marijuana; RD was also born six weeks prematurely. Respondent also admitted to hospital staff that she was an alcoholic. Respondent was discharged from the hospital, while RD remained for observation. When Children's Protective Services (CPS) subsequently visited respondent's home, she refused a drug test and refused to allow a CPS investigator to speak to BD or MB. Respondent

---

[1] Neither of the minor children's legal fathers are party to this appeal, and neither father was a respondent in the proceedings below at the time the trial court entered the order terminating respondent's rights to BD. Accordingly, we will refer to the mother of BD and RD in this case simply as "respondent."

[2] Respondent's parental rights to another minor child, MB, were also terminated in the trial court's order; however, respondent does not appeal that termination.

[3] Respondent voluntarily released her parental rights to RD during the proceedings below.

admitted to CPS that she used methamphetamines, marijuana, and alcohol, and she indicated that she did not have health insurance or food assistance benefits for herself or her children.

Petitioner, the Department of Health and Human Services (DHHS) filed a petition and request for removal of BD, MB, and RD from respondent's custody. The petition alleged the facts stated above, as well as that CPS had investigated respondent on six previous occasions following reports of neglect and sexual abuse of BD and MB. BD's school had reported to CPS that he often slept in school, was very unclean, and was so hungry that he regularly asked his teacher for food. The trial court authorized the petition, ordered the children removed, and appointed the children a lawyer-guardian ad litem (LGAL). MB and BD were placed in nonrelative foster care, while RD remained in the hospital for observation. Petitioner subsequently filed an amended petition adding additional allegations concerning RD.

Respondent pleaded no contest to various allegations in an amended petition, and the trial court took jurisdiction over the children. The trial court ordered respondent to engage in Family Treatment Court to address her substance-abuse disorders, as well as follow the treatment plan she had signed, which included psychological and substance-abuse assessments, counseling, and completing a detoxification and inpatient substance-abuse treatment program. Respondent also agreed to submit to random drug screens, have 90 days of negative drug screens, participate in parenting time, and maintain a source of income and safe and appropriate housing. Over the next 17 months, respondent did not participate in Family Treatment Court, did not regularly exercise her parenting time with BD, failed to submit to numerous drug screens, and did not complete an inpatient substance-abuse treatment program or remain sober for any demonstrable length of time.

At a dispositional hearing in August 2024, the LGAL reported that BD wanted the trial court to know "that he misses his mother and would like to see and talk to her and hug her." The LGAL further stated:

> You know, I get the impression from [BD] that he just wants to have a connection to some biological family. I don't know if he understands that the home that he is in is not for certain, a pre-adoptive home or not. I certainly don't bring that up with him. But, you know, if [respondent] is not progressing on her treatment plan, even though [BD] wants to see his mother, I don't think that would be good for him. Especially with the upcoming termination trial in October. But all three children's needs are being met in the current placements, and I do recommend they stay there.

Following a termination hearing in October 2024, the trial court found that statutory grounds for termination of respondent's parental rights had been proven and that termination of respondent's parental rights was in BD's best interests. This appeal followed.

## II. STANDARD OF REVIEW

In juvenile protective proceedings, we review unpreserved issues for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2; *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have

occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App at 135 (quotation marks and citation omitted). In termination proceedings, we review for clear error a trial court's findings of fact and best-interest determination. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. ANALYSIS

Respondent argues that the trial court erred by not appointing separate counsel for BD once BD expressed a desire to have contact with respondent, and that this error requires reversal of the trial court's best-interest determination. We disagree.

Once a court finds that a petitioner has proven a statutory ground for termination by clear and convincing evidence, it must terminate parental rights[4] if "it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

An LGAL's powers and duties during a juvenile protective proceeding are set forth in MCL 712A.17d, which states in relevant part:

> (1) A lawyer-guardian ad litem's duty is to the child, and not the court. The lawyer-guardian ad litem's powers and duties include at least all of the following:
>
> (a) The obligations of the attorney-client privilege.
>
> (b) To serve as the independent representative for the child's best interests, and be entitled to fully and actively participate in all aspects of the litigation and access to all relevant information regarding the child.
>
> \* \* \*
>
> (i) To make a determination regarding the child's best interests and advocate for those best interests according to the lawyer-guardian ad litem's understanding of those best interests, regardless of whether the lawyer-guardian ad litem's determination reflects the child's wishes. The child's wishes are relevant to the lawyer-guardian ad litem's determination of the child's best interests, and the lawyer-guardian ad litem shall weigh the child's wishes according to the child's competence and maturity. Consistent with the law governing attorney-client

---

[4] Respondent does not does not challenge the trial court's findings regarding the statutory grounds for termination. We note that the evidence presented at the termination hearing, including respondent's own admissions, clearly established that the conditions that led to the adjudication continued to exist at the time of the hearing and that those conditions would not be rectified within a reasonable time given BD's age. See MCL 712A.19b(3)(c)(*i*).

privilege, the lawyer-guardian ad litem shall inform the court of the child's wishes and preferences.

* * *

(2) If, after discussion between the child and his or her lawyer-guardian ad litem, the lawyer-guardian ad litem determines that the child's interests as identified by the child are inconsistent with the lawyer-guardian ad litem's determination of the child's best interests, the lawyer-guardian ad litem shall communicate the child's position to the court. If the court considers the appointment appropriate considering the child's age and maturity and the nature of the inconsistency between the child's and the lawyer-guardian ad litem's identification of the child's interests, the court may appoint an attorney for the child. An attorney appointed under this subsection serves in addition to the child's lawyer-guardian ad litem.

Respondent argues that, before the termination trial, BD expressed an interest in seeing her and that this conflicted with the LGAL's conclusion that termination of respondent's parental rights was in BD's best interests. She further argues that this conflict triggered the LGAL's obligation to inform the trial court of the inconsistency so that the trial court could appoint BD counsel under MCL 712A.17d(2). Respondent contends that the trial court failed to consider appointing BD counsel and that it failed to consider the conflict between BD's wishes and the LGAL's recommendation when it made its best-interest determination.

Respondent's position is inconsistent with the record. She is correct that, sometime before the dispositional hearing in August 2024, BD expressed that he missed his mother "and that he wouldn't mind talking to her on the phone." The record reflects that LGAL reported BD's statements to the trial court as required by MCL 712A.17d(1). The LGAL's statements also indicate that BD understood why he was not in respondent's care and recognized that respondent had failed to do what she needed for him to return to her custody.

At the termination hearing, the foster-care worker testified that BD had expressed that he loved respondent and would like to visit her, but that he had also stated that it would not be best for him to live with her. As required by MCL 712A.17d(1)(i), the LGAL told the trial court that a bond remained between BD and respondent. The LGAL further stated that BD was open to living with his foster mother or any willing relative because he was "just really desperate to belong to somebody on a permanent basis," which was something respondent admitted that she could not provide BD within a reasonable time.

To the extent that respondent suggests that the LGAL did not disclose BD's wishes or preferences to the trial court, the record shows otherwise. Also, contrary to respondent's argument, BD's wishes did not conflict with the LGAL's understanding of his best interests. See MCL 712A.17d(1)(i). BD stated that he missed respondent and that he would like to see her for a visit or speak to her on the phone, but he also stated that he did not want to return to her care. This was not in conflict with the LGAL's conclusion about BD's best interests, but was fully consistent with her position. Nothing in the record indicates that BD wished to return to permanently return

to respondent's custody, and accordingly the trial court did not err by failing to appoint another attorney to represent BD's interests under MCL 712A.17d(2).

Additionally, a child's bond with a parent is simply one of several factors that a trial court must consider when determining whether termination is in the best interests of the child. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). A trial court also considers a child's placement with relatives, "the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *Id.* (quotation marks and citation omitted).

In this case, at the time of termination, respondent's parenting time had been suspended because she had missed so many visits with BD, she was not taking any steps to address her severe alcohol and drug addictions, and her visits and missed visits had caused BD significant emotional distress. While in respondent's care, BD was neglected, he was emotionally and sexually abused, and he did not have enough to eat. Respondent was also unwilling or unable to get BD to school on many days, he was often late to school, he was so exhausted that he slept during school, and he was so hungry that he regularly asked his teacher for food. BD also went to school without bathing and wore the same clothes for several days in a row. The trauma that he experienced required intensive therapy after he was removed from respondent's home; he continued to require this therapy as of the date of the termination trial.

The record shows that, at the time of the termination hearing, respondent was in a worse position than when BD was removed from her care. Although she claimed that she was recently sober, respondent conceded that she could not offer any proof of her sobriety, she did not submit to a drug test offered to her the day before trial, and she admitted that she had failed to complete several inpatient substance-abuse treatment programs. Further, respondent was no longer employed and no longer had her own home. Respondent was instead living with her mother in Indiana, where her mother regularly gave respondent money to buy alcohol and drugs. Respondent also failed to apply for government benefits to support herself or the children; she had no phone, transportation, or health insurance; and she was in poor physical health because of her years of drug and alcohol abuse. By her own admission, respondent did not complete any services offered by the DHHS, and she would not be able to provide a suitable home for BD for another year despite the offer of numerous services over the previous 17 months.

After BD was removed from respondent's care, he finally received the medical, dental, and psychological care he needed. BD's foster mother was willing to provide BD with a home for as long as he needed, and perhaps permanently, while the DHHS determined whether the parental rights of BD's father should be terminated or whether BD's paternal aunt could be an appropriate adoptive home. BD was happy and comfortable in the foster home, and, by the time of the termination hearing, BD had made significant progress academically and socially, and his behavior had markedly improved. The abuse and neglect that he suffered as a younger child led to BD's diagnosis of post-traumatic stress disorder, neglect, psychological abuse, sexual abuse, and impulse-control and conduct disorder. The record plainly reflects that BD needed both intensive mental health treatment and a safe and stable home. Even as a 10-year-old child, BD recognized that respondent did not take the necessary steps to reunify with him and that it was in his best interests not to return to her care.

No record evidence supports respondent's argument that BD's view of his best interests conflicted with the LGAL, and ample evidence supported the trial court's ruling that it was in BD's best interests to terminate respondent's parental rights. See *In re Alexander*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369324); slip op at 8. Accordingly, we affirm the trial court's holding that termination was in BD's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace