*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TOMANICA, Minors.

UNPUBLISHED
October 23, 2025
2:04 PM

No. 374883
Clinton Circuit Court
Family Division
LC No. 24-032144-NA

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

The trial court terminated respondent-father's parental rights to his children, TT and RT. On appeal, respondent-father argues that the trial court erred by finding that petitioner made reasonable efforts, that the statutory requirements for termination were met, and that it was in the children's best interests to terminate parental rights. We affirm.

## I. BACKGROUND

The children's biological mother passed away in 2019. The children lived with respondent-father, respondent-father's girlfriend, and their grandfather, respondent-father's father. In February 2024, the children began living with their maternal aunt and uncle after TT disclosed to Children's Protective Services (CPS) that she was sexually abused by the grandfather. TT's allegations involved the grandfather touching TT and her friends inappropriately, forcing TT to watch pornography with him, and placing his hands inside TT's pants. She also reported to CPS that she had told respondent-father about the abuse but he would not listen and thought she was lying. In October 2024, RT also disclosed to CPS that the grandfather had sexually abused him by touching RT's penis several times, attempting to bribe RT to perform fellatio, forcing RT to watch pornography, and attempting to force RT to masturbate with the grandfather. RT told CPS that he had told his father about what was happening but respondent-father did not believe him.

In November 2024, the Department of Health and Human Services (DHHS) filed a petition to remove the children from respondent-father's care and to terminate his parental rights. The petition alleged that respondent-father did not believe the children and failed to take any action when the children disclosed to respondent-father the grandfather's alleged sexual abuse.

Respondent-father waived the probable-cause determination. The children were removed from his care and placed with their aunt and uncle, with whom they were already living with at the time. At the adjudication trial, respondent-father pleaded no contest to allegations in the petition regarding abuse and his knowledge of the abuse.

The trial court then moved to a dispositional hearing with termination as the goal at petitioner's request, over respondent-father's objections that the goal should instead be reunification. Casey Tenlen, the foster-care specialist, testified that although the children had informed respondent-father about the sexual abuse, respondent-father did not believe them and instead defended the grandfather. She prepared an initial service plan and provided it to the trial court and counsel. Tenlen had attempted to visit and inspect respondent-father's home, but no one answered the door; she had no other interactions with respondent-father. Respondent-father's girlfriend had contacted Tenlen about a week before the adjudication trial and Tenlen had suggested that respondent-father take parenting classes. Respondent-father had not provided any support for the children while they were living with their aunt and uncle, either financial or material. He refused to sign for TT's medication to treat her learning disability and mental-health disorders, and petitioner instead had to sign for the medication pursuant to court order.

The children were in therapy and counseling and were doing much better, but RT struggled to discuss the abuse. Tenlen testified that the abuse traumatized 15-year-old RT to such an extent that he was failing in school and had recently stated that he wanted to harm both respondent-father and the grandfather because of the abuse. Tenlen testified that neither child wanted to be reunified with respondent-father, and they desired to have no contact with him. Seventeen-year-old TT had expressed that she did not want reunification because she feared that if she lived with respondent-father again, he would continue to disbelieve her if something were to happen.

Both Tenlen and Alycia Marion—a CPS investigator and service specialist—believed that termination was in the children's best interests. Marion became involved in the case after RT disclosed the abuse. When Marion met with respondent-father to inform him of the allegations, respondent-father did not believe that the abuse had occurred. Marion concluded that termination was in the children's best interests because respondent-father did not believe the children, was still living with the grandfather, and had failed to protect the children from the abuse.

The trial court found that there was clear and convincing evidence to terminate respondent-father's parental rights to the children under MCL 712A.19b3(b)(*ii*), (g), and (j) and that termination was in the children's best interests. The trial court determined that respondent-father continuing to live with the grandfather despite the allegations "really demonstrates that there is not a . . . reasonable period of time within which the barriers that brought this case to court could be rectified." The trial court also noted how respondent-father had not reached out to check on the children, had refused to consent to medication for TT, and gave no indication that he believed the allegations. Respondent-father now appeals.

## II. ANALYSIS

## A. REASONABLE EFFORTS

First, respondent-father argues that petitioner failed to make reasonable efforts at reunification. We review for clear error the trial court's findings regarding reasonable efforts. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018) (cleaned up). Clear error occurs if this Court is left with a definite and firm conviction that the trial court made a mistake. *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019). Typically, petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (cleaned up). Petitioner must create a service plan that "outlines the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 259 (cleaned up).

We note at the outset that reasonable efforts may not, in fact, have even been appropriate here. Reasonable efforts do not need to be made if there is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in MCL 722.638. MCL 712A.19a(2)(a). MCL 722.638(1)(a)(*ii*) describes an aggravating circumstance when petitioner determines that a person who is at least 18 years old and who resides in the child's home has abused the child or a sibling of the child with "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." Here, petitioner cited MCL 722.638(1)(a) in its petition and amended petition. TT allegedly disclosed that the grandfather had touched and penetrated her vagina and that the grandfather was living in the children's home when this occurred. Accordingly, there was likely sufficient evidence in the record to conclude that reasonable efforts were not necessary because of the aggravating circumstances. The trial court did not, however, make this finding on the record.

In any event, the trial court did not err by finding that petitioner made reasonable efforts. Petitioner attempted to develop a service plan and provide services, but respondent-father rebuffed petitioner's attempts. Marion met with respondent-father at the outset of the case, but respondent-father then cut off all contact with petitioner. Marion and Tenlen confirmed at multiple hearings that they had attempted to contact respondent-father without success. Without contact with respondent-father, as a result of his conduct, petitioner could not take steps to achieve reunification.

Petitioner-father argues that petitioner and the trial court failed to address his right to services and that services were not offered until respondent-father's girlfriend reached out to petitioner. Both respondent-father and petitioner acknowledge that petitioner referred respondent-father to parenting classes. Respondent-father then argues that petitioner and the trial court completely ignored the fact that he had completed the paperwork necessary to begin the services.

This was an instance of too little, too late. "Although [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent-parent to participate in the services and demonstrate having benefited from them." *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 9. Petitioner cannot be faulted for not implementing a service plan when respondent-father cut off communications at the outset. And even when his girlfriend reached out to petitioner later in the proceedings, it is telling that respondent-father himself failed to do so. The fact that respondent-father may have been ready to begin the services right before termination proceedings does not mean that he met his responsibility to participate in the services, let alone demonstrated that he benefited from them at the time of termination. The trial court did not err

when finding that petitioner made reasonable efforts for reunification given the efforts petitioner was able to make and the participation of respondent-father in the process.

## B. STATUTORY GROUNDS FOR TERMINATION

Next, respondent-father argues that the trial court erred by finding that petitioner had proven the statutory grounds for termination of parental rights. This Court reviews for clear error a trial court's determination that at least one statutory ground for termination was proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court terminated respondent's parental rights, in part, under MCL 712A.19b(3)(b)(*ii*), which provides for termination when the child or the child's sibling has suffered physical injury or physical or sexual abuse, and the parent had the opportunity to prevent the injury or abuse, but failed to do so, and the trial court "finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home."

Here, the children had disclosed to respondent-father the sexual abuse perpetrated by the grandfather. Respondent-father did not believe the children, defended the grandfather's behavior, and continued to live with the grandfather. The trial court highlighted that respondent-father did not reach out to check on the children, refused to fill TT's medication, and gave no indication that he believed the children's disclosures. The trial court determined that it would be harmful if the children were reunified with respondent-father, and the evidence amply supported this finding.

Respondent-father argues that he did not know about the abuse and that he could not prevent abuse about which he did not know. Although respondent-father argued that he had no knowledge of the abuse, he failed to present any such evidence. In contrast, petitioner presented ample evidence through Marion and Tenlen's testimonies that the children informed respondent-father about the abuse. And given that the Michigan Rules of Evidence do not apply to termination proceedings, *In re Mota*, 334 Mich App 300, 313; 964 NW2d 881 (2020), this hearsay testimony was allowable. Giving "due regard to the trial court's special opportunity to observe the witnesses," *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004), the trial court did not err by finding that termination was warranted under MCL 712A.19b(3)(b)(*ii*). Because only one statutory ground was necessary for termination, we need not address the remaining statutory grounds for termination.

## C. BEST-INTEREST DETERMINATION

Finally, respondent-father argues that the trial court erred by determining that termination was in the children's best interests. We review for clear error the trial court's ruling regarding best interests. *In re Olive/Metts Minors*, 297 Mich App at 40. If the trial court determines that there are statutory grounds to support termination, then "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The trial court may consider the whole record and various factors when coming to its conclusion on termination. *In re Sanborn*, 337 Mich App at 276-277. Relevant factors may include the children's bond to the parent; the children's need for permanency, stability and finality; the children's ages; and the parent's visitation history and compliance with treatment plans. *Id.*

Here, the trial court highlighted the children's concerns and feelings in regard to the situation, as well as the surrounding factors. Neither child wanted to return to respondent-father's care, and both had felt betrayed. TT had special needs, required assistance, and feared that nobody, including her father, would believe her if something else were to occur. RT wanted to hurt respondent-father and was failing in school. Respondent-father continued to reside with the grandfather, blocked case workers from inspecting the home, and did not engage in any services. In their current placement with their aunt and uncle, the children were provided permanence, support, and safety.

Respondent-father argues that the trial court failed to consider other factors including respondent-father's history of providing care prior to the children's removal, respondent-father's mental and physical health, and the children's school and community record. Although there are various factors that a trial court may consider, nothing requires a trial court to examine specific factors such as the ones respondent-father is arguing. See *id*. Ultimately, the question is whether termination is in the children's best interests, which focuses on the children rather than the parent. *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013). The trial court premised its decision on the entirety of the record, including the seriousness of the allegations, the children's trauma and struggles, and respondent-father's inaction and decision to maintain the status quo. Respondent-father has not shown that the trial court clearly erred when it considered the whole record and various factors that focused on the children when deciding that termination was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock